FOX, APPELLEE, *v.* CITY OF BOWLING GREEN ET AL., APPELLANTS.

[Cite as *Fox v. Bowling Green* (1996), 76 Ohio St.3d 534.]

(No. 94–2544—Submitted January 24, 1996—Decided September 4, 1996.)

536

*Lucas, Prendergast, Albright, Gibson & Newman, James E. Melle* and *Michael D. Bridges,* for appellee.

*Marshall & Melhorn, Thomas W. Palmer* and *David L. O'Connell,* for appellants.

*Spater, Gittes, Schulte & Kolman, Kathleen B. Schulte* and *Frederick M. Gittes,* urging affirmance for *amicus curiae,* Ohio Employment Lawyers Association.

*John E. Gotherman* and *Malcolm C. Douglas,* urging reversal for *amici curiae,* Ohio Municipal League and Ohio Municipal Attorneys Association.

---

PFEIFER, J. We hold that to gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred.

Ohio's Whistleblower statute provides an employee protection from employer retaliation under certain circumstances when the employee reports activity of fellow employees in the workplace. R.C. 4113.52(A)(3) provides:

"If an employee becomes aware in the course of his employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of his employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."

Thus, R.C. 4113.52(A)(3) sets forth what an employee needs to do to fall under the statute's protection for reporting activities of co-workers. This court held in *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, at the syllabus, that an "employee must strictly comply with the dictates of R.C. 4113.52" in order to receive the protection of the statute. The dictates of R.C. 4113.52 are not complete without a consideration of the effect of R.C. 4113.52(B). This court cannot construe R.C. 4113.52(A)(3) in isolation but rather, must construe it in conjunction with other subdivisions of R.C. 4113.52. R.C. 4113.52(B) provides in pertinent part:

"No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division."

R.C. 4113.52(B) carries the statute's punch. That part of the statute sets forth what the employer may not retaliate against, and what actions bring about employer liability under the statute. R.C. 4113.52(B) does not require that the information the employee reports be completely accurate as long as "the employee made a reasonable and good faith effort to determine the accuracy of any information so reported." R.C. 4113.52(B) does not exclude the "aware[ness] * * * of a violation" component of R.C. 4113.52(A)(3) from the protection of the "reasonable and good faith effort" requirement.

Thus, if an employee reports to his employer that a fellow employee is violating a state statute and that the violation is a criminal offense and is likely to cause a hazard to public health, each informational component of that report—the violation, the criminality, and the risk to public safety—is "information so reported" under R.C. 4113.52(B). The reporting employee is protected from retaliation as long as he made a "reasonable and good faith effort to determine the accuracy" of each informational element. That necessarily includes information regarding the violation.

When the General Assembly enacts a statute, "it is presumed that * * * [a] just and reasonable result is intended." R.C. 1.47(C). To require that an actual violation must occur for a whistleblower to gain protection leads to nonsensical results which are unjust, unreasonable, and contrary to the spirit of the statute and public policy. Under the trial court's interpretation of the statute, each whistleblower would have to become equal parts policeman, prosecutor, judge, and jury. A whistleblower could never be certain that a statute has been *actually* violated until the perpetrator was found guilty in court. Suppose that a dispatcher of a taxi company is told by an on-duty driver that the driver is drunk. The employee believes that the driver does indeed sound intoxicated. Does the dispatcher need to chase down the driver, perform field sobriety, breathalyzer and blood tests before he may report to his supervisor that the driver is driving while intoxicated? The "actual violation" interpretation also begs a variant on the proverbial philosophy question about a tree falling in the forest: Has a statute been violated if no one is arrested and tried for it?

From a public policy perspective, the "reasonable belief" standard is the only acceptable interpretation of the statute. R.C. 4113.52 was designed to give whistleblowers some protection in Ohio's employment-at-will environment. Prior to the statute, they had no protection. See *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. The public, in turn, relies on whistleblowers for protection. The "actual violation" standard could delay a whistleblower's reporting of a violation which endangers the public safety, or at worst, prevent him from reporting the violation at all. The statute expects a

whistleblower to be vigilant, attuned to the public's safety, loyal to his employer, and sometimes even brave—it does not require him to be infallible.

In the present case, Fox reported that Captain Votava and Lieutenant Brokamp, fellow employees, had improperly disposed of tear gas canisters. Fox testified in deposition that he had contacted a company that specialized in hazardous material disposal and was told that a permit was required to dispose of tear gas. Furthermore, two landfills refused to take the canisters because permits were required for their disposal. Based on that evidence, we find that a trier of fact could conclude that Fox filed his report to the police chief and safety director with a reasonable and good faith belief that Captain Votava and Lieutenant Brokamp had violated the law or a department policy by setting off the tear gas canisters in the field. We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*

MOYER, C.J., YOUNG, PATTON and COOK, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., concur in part and dissent in part.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for WRIGHT, J.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for RESNICK, J.

DOUGLAS, J., concurring in part and dissenting in part. While I concur with much of the reasoning and discussion of the majority, I respectfully dissent from its ultimate judgment because after a review of the record, it appears that the employee in this case did not suffer any damage. I note, with interest, that neither the majority nor the court of appeals suggests what action the trial court should take if, upon remand, the trial court finds that Fox "reasonably believed that Captain Votava and Lieutenant Brokamp had violated a law, a work rule or department policy in disposing of the tear gas."

F.E. SWEENEY, J., concurs in the foregoing opinion.