MADISON et al., Appellants and Cross–Appellees,

v.

**USF&G FINANCIAL SERVICES CORPORATION
et al., Appellees and Cross–Appellants.**

[Cite as *Madison v. USF&G Fin. Serv. Corp.* (1997), 118 Ohio App.3d 431.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–950783 and C–950820.

Decided Feb. 26, 1997.

William H. Blessing, for appellants and cross-appellees.

Keating, Muething & Klekamp and Robert W. Maxwell II, for appellees and cross-appellants.

Per Curiam.

Plaintiffs-appellants/cross-appellees, Laurence A. Madison and Diane L. Madison, appeal a decision of the Hamilton County Court of Common Pleas granting a directed verdict in favor of defendants-appellees/cross-appellants, USF & G Financial Services Corp. ("USF & G") and Premium Travel Services, Inc. ("Premium"), in an action under the Ohio Whistleblower's Act, R.C. 4113.51 et

*seq.* Appellees appeal that part of the trial court's decision ordering the parties to bear their own costs. We affirm the trial court's decision.

Evidence presented at trial showed that in 1989, Laurence Madison, a certified public accountant, became the chief financial officer of Premium. USF & G had loaned substantial sums of money to Premium, and its executives had asked Madison to monitor the financially troubled company. USF & G and Premium had also entered into a debenture agreement in which Premium agreed to sell eighty percent of its stock to USF & G when USF & G chose to exercise its right to convert.

By the latter part of 1990, Premium's financial position had not improved. Madison testified that USF & G instructed him to search for a buyer for the company. He negotiated with a serious potential buyer, and he helped present that buyer's proposal to USF & G management in Baltimore on December 10, 1990.

In late October of that year, Premium's board of directors appointed Ed Williams as chief operating officer to oversee the company's day-to-day operations. Simon Mikhailovich, a USF & G employee, was assigned to assist Williams. In late November, USF & G exercised its debenture, making it Premium's majority shareholder. At a shareholders' meeting held on December 7, 1990, Williams and Mikhailovich were elected to Premium's board of directors and Williams was appointed president. The board members then decided to cut expenses by terminating some positions within the company.

Madison testified that in November 1990, Williams had told him that Premium was not going to continue in business; it would be sold or shut down. Upon learning that the company was not going to continue, Madison expressed concern to Williams regarding the treatment of approximately two million dollars of preopening costs in the financial statements. On previous financial statements, those costs had been shown as capitalized start-up costs, an asset, which was appropriate for an ongoing concern. Madison testified that accounting principles required him to show the two million dollars as an expense as soon as he learned that Premium would not be an ongoing business. He told Williams, who was also a trained accountant, that if the company was not viable, these costs would have to be written off. Williams disagreed.

On December 11 and 12, after returning from the meeting with the buyer in Baltimore, Madison worked to complete the company's financial statements for November. Madison testified that he had a duty to produce accurate financial statements and that he was particularly concerned about the integrity of the statements given that a potential buyer might be inspecting them. He also testified that he believed producing false financial statements and sending them by wire were potentially fraudulent. Consequently, Madison changed the state-

ments to show the two million dollars in previously capitalized costs as an expense. That evening, he sent them to USF & G in Baltimore by facsimile and placed a copy on Williams's desk.

Williams discovered the statements on his desk the following morning. As Madison was talking to his secretary, an enraged Williams came up to them and began yelling at Madison. Williams stated that Madison had exceeded his authority and ordered him to change the statements to treat the preopening costs as they had been treated previously. Madison expressed his disagreement but followed Williams's instructions, feeling that the financial statements were "misleading and false." Along with the revised statements, he sent a letter to Williams, stating:

"From an accounting theory perspective, it is appropriate to reverse the preopening capitalized costs in the period where it is determined that the ongoing business assumptions for the particular branches are changed significantly from the assumptions applicable when the preopening costs were originally established. Although we talked about this issue a couple of weeks ago, the assumptions have changed since that discussion.

"Based on the current options available for PTS, it is my opinion that the ongoing assumptions for all branches where preopening costs were established have changed significantly. As Chief Financial Officer of Premium Travel, it is my responsibility to properly reflect the company's financial condition. Thus, it is my opinion that the preopening cost write-off is appropriate in the November financials."

Williams sent a memo to Madison in return, stating that Madison was "not in possession of all the facts regarding the options available to PTS" and that "there has been no decision made which would require the write-off of the branch preopening costs at this time."

Madison testified that a short time later, Williams and Mikhailovich had a fifteen-to-thirty-minute speaker phone call with USF & G in Baltimore. Subsequently, Williams had Madison paged. When he arrived in Williams's office, Williams and Mikhailovich told him his services were no longer needed and that he was being discharged immediately. He was told to clean out his office and leave. He was also told that they wanted his company car, and that he could find his own way home. Two armed guards escorted him to his office and waited while he boxed up his belongings. They then escorted him out of the building to the garage, where they waited while he removed his belongings from the car and returned the key. They then ushered him out of the garage and told him not to return.

Williams and Mikhailovich testified that the board of directors had already decided to eliminate Madison's position, along with several others, to save money. Several other individuals were also told that their positions were being eliminated that day. However, Madison presented testimony that none of those employees was treated in the same manner as he was. Williams and Mikhailovich also testified that the November financial statements were strictly for internal use. They were not shown to any potential buyer or any other person outside of USF & G. Further, the preopening costs were eventually written off in the December 1990 financial statements.

After both sides had rested their cases, the trial court granted appellees' motion for a directed verdict on the basis that there had been no violation of any state or federal statute or any municipal ordinance, and therefore that no crime had been committed. The court dismissed the complaint with prejudice and ordered the parties to bear their own costs. These appeals followed.

In his first assignment of error, Madison states that the trial court erred in construing Ohio's Whistleblower Act to require an employee to prove a criminal offense in order to obtain its protection. He argues that it protects an employee who reasonably believes that the employer's conduct is a crime and writes a memorandum to his supervisor which describes that wrongdoing. In his second assignment of error, Madison states that the trial court erred in granting a directed verdict by disregarding the evidence that sending false and fraudulent financial statements by wire can constitute a criminal violation. We find that these assignments of error are not well taken because the trial court was correct in granting a directed verdict, although its reasons for doing so were erroneous.

In ruling on a motion for a directed verdict pursuant to Civ.R. 50(A), the court must not consider the weight of the evidence or the credibility of the witnesses. The motion should be granted only if, construing the evidence most strongly in favor of the nonmoving party, the court finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469; *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 271, 642 N.E.2d 395, 400, certiorari denied (1995), 513 U.S. 1191, 115 S.Ct. 1253, 131 L.Ed.2d 134. To have his or her case submitted to the jury, the plaintiff must submit evidence upon every element essential to establish liability. *Strother, supra,* at 285, 21 O.O.3d at 179, 423 N.E.2d at 469.

R.C. 4113.52(A)(1)(a) provides:

"If an employee becomes aware in the course of his employment of a violation of any state or federal statute or ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes

that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."

If the employer does not make a good-faith effort to correct the violation within twenty-four hours of being notified, the employee may then file a written report with an appropriate person as specified in R.C. 4113.52(A)(1)(a). *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 247–248, 652 N.E.2d 940, 943–944. The employer may not take retaliatory action against the employee for making a report authorized by R.C. 4113.52(A) provided that the employee has made a reasonable and good-faith effort to determine the accuracy of the information reported. R.C. 4113.52(B) and (C).

■ While this case was pending, the Ohio Supreme Court decided *Fox v. Bowling Green* (1996), 76 Ohio St.3d 534, 668 N.E.2d 898, which resolves a major point of argument between the parties. In that case, the court held that to gain the protection of the whistleblower's statutes, the employee need not show that a statute was actually violated, but only that the employee had a reasonable belief that a violation occurred. *Id.* at syllabus. Consequently, the trial court was incorrect in granting appellees' motion for a directed verdict on the basis that no crime was actually committed.

■ However, a reviewing court cannot reverse a correct judgment because the reasons underlying that judgment were erroneous. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309; *Kuhn v. Hamilton Cty. Bd. of Commrs.* (Mar. 27, 1996), Hamilton App. No. C–940328, unreported, 1996 WL 134464. In this case, a directed verdict was appropriate, since the evidence did not show that Madison's belief that a felony would be committed was reasonable. Madison contends that he believed that sending the financial statements to Baltimore without writing off the preopening costs would have constituted wire fraud. See Section 1343, Title 18, U.S. Code. However, the evidence, even when construed most strongly in Madison's favor, shows only a difference of opinion regarding the application of accounting principles to financial statements that were to be used internally. Even in his written memorandum to Williams, Madison did not in any way express that he thought the financial statements would be fraudulent. He stated only that from "an accounting theory perspective" he thought that writing off the preopening costs was "appropriate." Further, Madison did not make a good-faith effort to verify the accuracy of the assumption underlying the need to write off the preopening costs, that Premium definitely would no longer be an ongoing business. Though Madison was

obviously well-intentioned and perhaps badly treated by appellees, we hold that reasonable minds could come to but one conclusion, that the evidence was not sufficient to prove all of the essential elements of a whistleblower claim. Compare *Haynes v. Zoological Soc. of Cincinnati* (Dec. 22, 1993), Hamilton App. Nos. C–910598 and C–910635, unreported, 1993 WL 538977, reversed on other grounds (1995), 73 Ohio St.3d 254, 652 N.E.2d 948. Consequently, the trial court correctly granted a directed verdict in favor of appellees, albeit for the wrong reasons. Appellants' two assignments of error are overruled.

■■ In their cross-appeal, appellees assert a single assignment of error, in which they state that the trial court erred in finding that the parties should bear their own costs in the action. They argue that under R.C. 4113.52(E), the prevailing party should be awarded all of its costs of litigation where the claims asserted against it are without merit. We find this assignment of error is not well taken.

■ First, appellees failed to raise the issue in the trial court, and therefore they waived it. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630. Second, R.C. 4113.52(E) states that "[t]he court also *may* award the prevailing party all or a portion of the costs of litigation * * *." (Emphasis added.) The decision whether to award costs lies within the discretion of the trial court. *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 555, 597 N.E.2d 153, 156. See, also, *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464, 467; *Haynes, supra.* We cannot conclude that the trial court's decision not to award costs is so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Accordingly, we overrule appellees' assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., DOAN and GORMAN, JJ., concur.