[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff-appellant, Victoria Underwood, appeals the order of the Common Pleas Court of Seneca County granting summary judgment and awarding attorney fees in favor of defendants-appellees, Lori Myers and Mercy Hospital of Tiffin.
This case arises from a workplace incident which occurred on the morning of January 30, 1996, between plaintiff Victoria Underwood and defendant Lori Myers. At the time, both women were registered nurses employed in the emergency department of defendant Mercy Hospital. Myers was nurse manager of the department and Underwood's immediate supervisor. Although a matter of some dispute, the record indicates that immediately prior to the incident, a verbal confrontation took place between the two women over certain scheduling matters.
In her deposition, plaintiff states that she was working on a patient chart at the nurse's table in the Mercy Hospital emergency room when she saw Myers get up from her desk. Myers was carrying a pair of "pointed scissors in her left hand." Plaintiff believed that Myers was walking over to the nurse's table to put the scissors away. Instead, Myers braced her right arm behind plaintiff's left shoulder and positioned her body on plaintiff's left side, blocking plaintiff into her seat. With her left hand, Myers next pointed the scissors at plaintiff's chest and said "should I or shouldn't I." When plaintiff failed to respond, Myers repeated her statement. Plaintiff then replied "if you do, you'll be worse off in the end." Myers "waited a little bit," stated "`yeah, you're right,'" put the scissors away, and returned to her office. The scissors allegedly touched plaintiff's uniform top, although they never actually touched her body. Plaintiff indicates that she believed that defendant Myers' action was criminal and that she "had threatened my life." Plaintiff orally reported the incident to defendant Mercy Hospital's risk manager later that day. The next day, plaintiff filed a written report with Mercy Hospital describing Myers' actions, and reported the incident to the police.
The hospital conducted an investigation into the incident, and on February 7 Myers received a written warning for her conduct. That same day, the hospital requested that plaintiff "sit down with us and Lori [Myers] so that we could get it resolved." Plaintiff, however, refused to meet with Myers. Over the next several weeks, the hospital repeatedly asked plaintiff what actions she thought should be taken in relation to the incident. Plaintiff refused to answer these questions, ostensibly because she believed it was not her place to determine how the hospital should address the situation.
On February 14, the hospital required plaintiff to attend a meeting with Myers and members of the hospital administration. At that meeting, plaintiff was issued a thirty-six hour suspension for excessive and continued tardiness. Plaintiff understood this suspension to be a threat, although the hospital contends that it was merely administering due progressive discipline after earlier written and oral warnings.
On February 28, plaintiff was transferred out of the emergency room into a different department, at the same base rate of pay. She was told that the hospital administration had based the decision to transfer her on its investigation into the January 30 incident, and that the move "was in the best interest of Mercy Hospital and everybody involved * * *." When plaintiff expressed dissatisfaction with the transfer, she was told that "the choice was to report to ICU — or PMCU or not at all." Plaintiff then accepted the transfer. As a result of the transfer, plaintiff lost her position on the charge schedule of the emergency room. She was not placed on the charge schedule of her new department.
Subsequent to her transfer, plaintiff's job in the emergency room was posted as an open position. On March 22, plaintiff applied for the open position. Thereafter, she was told by the hospital administration that she would not be returned to the emergency room.
Also in late March, plaintiff was removed from the hospital's resource supervision schedule, which resulted in a loss of income to plaintiff. On May 17, plaintiff resigned from Mercy Hospital. Plaintiff filed this lawsuit by fax complaint on September 20, 1996, and subsequently filed an original complaint on September 23, 1996.
Plaintiff's first claim for relief charged that defendant Myers' action constituted an assault; her third and fourth claims for relief alleged that defendant Mercy Hospital's actions were in violation of R.C. 4113.52 (the so-called "Whistleblower" statute); her fifth claim is that she was constructively discharged in violation of the public policy of Ohio as expressed in R.C.4113.52.[1] The trial court granted summary judgment to Myers and Mercy Hospital on all of plaintiff's claims and awarded attorney fees to both defendants. Plaintiff now appeals both the grant of summary judgment and the award of attorney fees asserting the following assignments of error:
 I. The Trial Court erred in granting Appellee's Motion for Summary Judgment on the first cause of action for assault as reasonable minds could find there is dispute of genuine issue of material fact.
 II. The Trial Court erred in granting Appellee's Motion for Summary Judgment on Appellant's third cause of action on whether Mercy Hospital reported the result of its investigation to Appellant as reasonable minds could find there is dispute of genuine issue of material fact.
 III. The Trial Court erred in granting Appellee's Motion for Summary Judgment as to Appellant's fourth cause of action in regard to retaliatory action taken by Mercy Hospital against Appellant as reasonable minds could find there is dispute of genuine issue of material fact.
 IV. The Trial Court erred in granting Appellee's Motion for Summary Judgment on the issue of constructive discharge as reasonable minds could find there is dispute of genuine issue of material fact.
 V. The Trial Court erred in awarding attorney fees to Defendants contrary [to] Ohio law, as there was neither a finding of bad faith nor statutory authorization.
When reviewing the grant of a motion for summary judgment, appellate courts review the judgment independently and do not give deference to the trial court. Schuch v. Rogers (1996), 113 Ohio App.3d 718,720. Accordingly, the appellate standard for summary judgment is the same as that of the trial court. MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6,8. In Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679,686-87, the Ohio Supreme Court held that summary judgment is proper
 when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.
A. PLAINTIFF'S CLAIM PERTAINING TO DEFENDANT MYERS
Plaintiff's first assignment of error argues that there is a genuine issue of material fact as to whether she was assaulted by Myers, and that therefore the trial court's grant of summary judgment on this issue was improper.
In Retterer v. Whirlpool Corp. (1996), 111 Ohio App.3d 847,854 (citations omitted), this court held:
 An assault in tort is "the willful threat or attempt to harm another offensively, which threat or attempt reasonably places the other in fear of such contact." A key element of assault is that the alleged tortfeasor "knew with substantial certainty that his or her act would bring about harmful or offensive contact."
In this case, we find the record does contain evidence establishing a genuine issue as to whether an assault took place. It is undisputed that Myers held a pair of scissors up to plaintiff's chest in some fashion and made a remark which could possibly have been interpreted by plaintiff as threatening. Although Myers characterizes her conduct as a joke intended to raise plaintiff's spirits, plaintiff evidently understood it differently. As this court observed in Retterer, supra, the key issue is whether the defendant knew with substantial certainty that her act would bring about a harm to plaintiff. Under the circumstances, we believe it is for the trier of fact to decide what was in Myers' mind at the time of the incident. Accordingly, we sustain plaintiff's first assignment of error.
B. PLAINTIFF'S CLAIMS PERTAINING TO MERCY HOSPITAL
We will next address assignments of error two, three, and four. These claims arise from defendant Mercy Hospital's response to the incident between plaintiff and Myers.
In her fourth assignment of error, which we will address first, plaintiff alleges that the trial court wrongly concluded that there existed no genuine issue of material fact as to plaintiff's claim that she was constructively discharged in violation of the public policy of Ohio.
In Kulch v. Structural Fibers Inc. (1997), 78 Ohio St.3d 134,162, the Supreme Court held:
 * * * R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute. We further hold that an at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a cause of action against the employer * * * so long as that employee had fully complied with the statute and was subsequently discharged or disciplined.
Plaintiff is therefore entitled to bring a claim for wrongful discharge, so long as she strictly complied with the requirements of R.C. 4113.52. However, since plaintiff was not fired but rather quit, she must prove that she was constructively discharged in order to prevail on her common law cause of action. In Mauzy v.Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 588-89, the Supreme Court held that the test for constructive discharge is objective:
 [The test is w]hether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign * * *[.] In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable to attain the "discharge" label.
Based on the record, the trial court correctly concluded that no reasonable jury could find that plaintiff was constructively discharged. Plaintiff alleged that because she was disciplined and transferred into a new department (albeit at the same rate of pay and on the same schedule), but lost the monetary benefit of charge nurse and supervisory responsibilities, she was constructively discharged. When asked directly why she resigned, plaintiff stated that she felt "very harassed and frightened and still upset when I would have to work." However, plaintiff did not indicate why she felt harassed, frightened and upset.
Plaintiff contends that based on these facts, a reasonable jury could find that her working conditions were so intolerable that a reasonable person would have been forced to resign. We disagree.
In support of her argument, plaintiff cites us to the decision of the Hamilton County Court of Appeals in Chapman v.Adia Services, Inc. (1997), 116 Ohio App.3d 534, 546. In Chapman, the plaintiff was forced to choose between working alongside a co-worker who had insulted, threatened and assaulted her or, alternatively, driving a longer distance to work at a site where she would make less money. The plaintiff testified that she considered both options intolerable. The court concluded that a reasonable jury could find that the plaintiff was constructively discharged. In making its decision, the court placed special emphasis on a memorandum which indicated that the plaintiff's employer was attempting to get rid of her.
In contrast to Chapman, plaintiff in this case offered no evidence that her situation was intolerable. Moreover, there is no evidence in the record beyond plaintiff's own conclusory assertions that Mercy Hospital was attempting to force her to quit. Plaintiff did offer substantial evidence that she was not happy in her new position after she was transferred, and further offered evidence that she believed that Mercy Hospital had not dealt with her fairly. It is uncontroverted, however, that plaintiff did not resign from her new position until May 17, 1996, nearly two months after she was removed from the supervisory schedule, the last act by the hospital of which she complains. Construing these facts most favorably to plaintiff, we do not believe that a reasonable jury can conclude that the evidence establishes that plaintiff's situation was so intolerable that a reasonable person would believe that termination is imminent, as is required for a constructive discharge. Accordingly, plaintiff's fourth assignment of error is overruled.
Plaintiff's second assignment of error asserts that the trial court erred in concluding that no issue of fact exists in regard to Mercy Hospital's failure to provide a written report detailing its findings, in claimed violation of R.C. 4113.52, Ohio's Whistleblower statute. Plaintiff argues that the Whistleblower statute contains an implied claim for relief under R.C.4113.52(A)(1)(b), which requires that the employer notify the whistleblowing employee in writing of efforts made by the employer "to correct the alleged violation or hazard." We find it unnecessary to decide whether plaintiff's argument is correct because we believe that plaintiff's Whistleblower claim, to the extent she has one, falls solely under subsection (A)(3) of the statute, which has no such notice requirements.
Section (A) of the statute generally describes the types activities for which employees are protected for reporting: (A)(1) addresses violations of law "that the employee's employer has authority to correct," (A)(2) deals specifically with criminal violations of the State's environmental laws, and (A)(3) addresses "violation[s] by a fellow employee." Subsection (A)(1) is clearly directed toward situations with ongoing implications, ostensibly within the company's control, that the company has failed to address. Myers' alleged assault of plaintiff, by contrast, was a unique one-time incident between employees. While Mercy Hospital did have the ability to discipline Myers after the fact, and did so, it could no longer "correct" her violation within the meaning of section (A)(1) of the statute. Therefore, to the extent plaintiff has any claim under R.C. 4113.52, that claim would be limited to section (A)(3) of the statute. That section has no requirement that the employer notify the employee of actions taken in response to a reported violation. See R.C. 4113.52(A)(3). Accordingly, plaintiff's second assignment of error is overruled.
Plaintiff's third assignment of error asserts that the trial court erred in concluding that there was no genuine issue of material fact regarding plaintiff's claim of retaliation under R.C. 4113.52.
In Fox v. Bowling Green, 76 Ohio St.3d 534, 537, the Supreme Court set forth the purpose of R.C. 4113.52:
 [T]o gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred.
 Ohio's Whistleblower statute provides an employee protection from employer retaliation under certain circumstances when the employee reports activity of fellow employees in the workplace. R.C. 4113.52(A)(3) provides:
 "If an employee becomes aware in the course of his employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of his employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."
 Thus, R.C. 4113.52(A)(3) sets forth what an employee needs to do to fall under the statute's protection for reporting activities of co-workers.
On the one hand, we have some difficulty concluding that an isolated incident between co-workers of the nature alleged in this case falls within the intended purview of the Whistleblower statute. On the other hand, based on the foregoing interpretation of the Ohio Supreme Court, particularly with regard to "reasonable belief," we cannot say that plaintiff is excluded from the provisions of R.C. 4113.52(A)(3) as a matter of law. In any event, it is clear that an employee must satisfy strict requirements to invoke the statute. R.C. 4113.52(D) provides:
 If an employer takes any disciplinary or retaliatory action against and employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action * * * within one hundred eighty days after the date the disciplinary or retaliatory action was taken * * *[.]
By the clear language of section (D), the employee must bring her action within one hundred eighty days after the alleged retaliation occurred, or the claim is waived. Here, plaintiff first filed her complaint on September 20, 1996. As a result, any alleged disciplinary or retaliatory conduct which occurred prior to March 22, 1996 (allowing for the weekend) is barred by the one hundred eighty day rule clearly enunciated in the statute. Therefore, plaintiff's suspension, transfer, and removal from the charge nurse schedule (all of which occurred in February, 1996) may not be considered under her retaliation claim, since they fall outside the statute's express provisions.
Analysis of plaintiff's retaliation claim under R.C. 4113.52
is thus limited to two acts: the hospital's refusal to consider plaintiff for the open position in the emergency room (the job she had been transferred out of), and her removal from the resource supervisory schedule.[2] As to these actions, the trial court erred when it granted summary judgment to defendants. In short, there exists on the record triable issues of fact as to whether the hospital's actions in refusing to consider plaintiff for the open position and removing her from resource supervisory schedule were "retaliatory" under R.C. 4113.52(B). Of course, any damages which may be awarded if in fact the hospital's conduct is found to be retaliatory would be limited to those authorized by R.C.4113.52(E), pertaining only to those actions which occurred after March 22, 1996. To this extent only, plaintiff's third assignment of error is sustained.
C. ATTORNEY FEES
Plaintiff's fifth assignment of error alleges that the trial court awarded attorney fees to defendants contrary to law. Under Ohio law, prevailing parties are not generally entitled to attorney fees unless such an award is authorized by statute or the lawsuit was pursued in bad faith by the non-prevailing party. See, e.g., State, ex rel. Durkin v. Ungaro (1988), 39 Ohio St.3d 191,193. The trial court was silent as to the basis of its award.
The only statute at issue, R.C. 4113.52, does not provide for an award of attorney fees to a prevailing employer. Therefore, the trial court's award of attorney fees must be reversed unless plaintiff acted in bad faith. Because there are disputed issues of material fact as to plaintiff's first and third assignments of error, it follows that plaintiff did not pursue either cause of action in bad faith. The award of attorney fees to defendants was thus improper, and must be reversed.
In summary, plaintiff's first and fifth assignments of error are sustained, plaintiff's third assignment of error is sustained to the extent indicated, and plaintiff's second and fourth assignments of error are overruled. The judgment of the Common Pleas Court of Seneca County is affirmed in part and reversed in part and the case is remanded to that court for proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
EVANS and HADLEY, JJ., concur.
[1] Plaintiff voluntarily withdrew her second claim for relief in response to Mercy Hospital's motion for summary judgment. That claim is accordingly not considered in this opinion.
[2] Although plaintiff considers her "constructive discharge" to be retaliatory conduct within her Whistleblower claim, we need not address this argument, since we have already determined that plaintiff was not constructively discharged.