OPINION
{¶ 1} Defendant-appellant, Joshua E. Fuqua, appeals a judgment of conviction and sentence entered by the Hardin County Common Pleas Court finding him guilty of retaliation, a third degree felony in violation of R.C. 2921.05(A). On appeal, Fuqua argues that, as a predicate to liability under R.C. 2921.05(A), a civil or criminal witness must have appeared when subpoenaed and testified during trial proceedings to have "discharged" his or her duties. Because we find that the terms and concept of a "witness" having "discharged [his or her] duties" within the statute are not limited to those circumstances in which a subpoenaed witness has actually appeared and testified at trial and that sufficient evidence exists supporting the finding that the party against whom Fuqua retaliated had discharged his duties, we affirm the judgment of the trial court.
 {¶ 2} Facts and circumstances relevant to issues raised on appeal are as follows. In May 2000, Fuqua, James Smith, and Jacob Sanders entered The Company Store in Alger, Ohio, and stole cigarettes and money totaling approximately $2900. The men were jointly indicted in July 2000, each charged with one count of breaking and entering, one count of theft, and one count of receiving stolen property, all felonies of the fifth degree.
 {¶ 3} Smith subsequently entered into a negotiated plea, agreeing to enter a guilty plea to the receiving stolen property charge in return for the dismissal of the two remaining counts. As a condition of the agreement, Smith was required to testify truthfully in all hearings, trials, and proceedings involving his co-defendants. In Fuqua's case, Smith was listed in discovery as a witness the State intended to call in its case-in-chief and was subpoenaed to appear at Fuqua's jury trial, which was scheduled to begin April 9, 2001 at 9:00 a.m. However, Fuqua did not proceed to trial, electing instead, on the morning of trial, to enter a guilty plea to a lesser included offense of receiving stolen property, a first degree misdemeanor in violation of R.C. 2913.51(A).
 {¶ 4} Within a few hours of his April 9th sentencing hearing, Fuqua proceeded to Smith's apartment complex and approached Jessica Rushlow, Smith's pregnant girlfriend, inquiring about how Smith had turned State's witness. Later that evening, Fuqua verbally harassed Smith, shouting that he was a "fucking snitch" and that he would "get [him] sooner or later." Within the next few hours, Fuqua made additional threats, indicating that he would get Smith eventually and that he could not hide forever. The following day, Fuqua again approached Smith's girlfriend and informed her that he knew that Smith was in the apartment and was going to "dot his eyes." Later that evening, Fuqua allegedly threw a rock at Smith's apartment window and again shouted that he was going to get him and that he could not hide forever.
 {¶ 5} Fuqua's threats culminated on April 11, 2001, when he threatened Smith in front of the Alger Chief of Police, Jerry Corwin, and a neighbor. Smith, returning home with his girlfriend and two-year-old son, saw Fuqua standing with a group of four to five individuals outside of the apartment complex. Fearing for their safety, Smith approached Chief Corwin, who was dressed in his uniform, and requested that Corwin escort them to their apartment. While Smith was explaining the reason for his request, Fuqua approached Smith. Chief Corwin and the neighbor testified that although Fuqua initially indicated that he was not going to do anything, his tone rapidly changed and he repeatedly called Smith a rat and a snitch and stated that he would not get him in the daytime, but would get him at night and that his time was coming.
 {¶ 6} On May 4, 2001, the Hardin County Grand Jury indicted Fuqua with retaliation, a third degree felony in violation of R.C. 2921.05(A), for the conduct which occurred from April 9, 2001 through April 11, 2001. The matter proceeded to a bench trial on September 19, 2001.
 {¶ 7} During the proceedings, Fuqua argued that, as a predicate to liability under R.C. 2921.05(A), a civil or criminal witness must have appeared when subpoenaed and testified during trial proceedings to have "discharged" his or her duties. The State countered that the concept of "witness" and "duties" embodied within the intimidation and retaliation statutes was much broader than Fuqua's narrow interpretation, arguing that he should not be able to avoid liability under the statute merely by pleading guilty. The State contended that Smith, who testified that he had been subpoenaed to testify and was prepared to testify that morning, had effectively discharged his duties as a witness for purposes of the statute.
 {¶ 8} The court subsequently found Fuqua guilty, finding in part:
 {¶ 9} "1. That the term `witness' includes those who see and/or hear an event as well as those who testify in Court about it. This status does not cease upon a plea of guilty and sentencing of a person accused of a crime.
 {¶ 10} "2. The duties of a `witness' include not only the act of testifying but all of the preliminary aspects of becoming formally involved in the process of identification and case preparation.
 {¶ 11} "3. James B. Smith had discharged the duties of a witness prior to the retaliatory conduct of April 9-11, 2001, engaged in by Defendant.
 {¶ 12} "4. The retaliatory conduct aforesaid was directly related to the discharge of such duties."
 {¶ 13} On February 6, 2002, Fuqua was sentenced to a three-year term of imprisonment. The instant appeal followed, with Fuqua presenting the following single assignment of error for our review: "The Trial Court committed an error of law in finding the appellant guilty of retaliation based upon its erroneous interpretation of R.C. 2921.05(A)."
 {¶ 14} The elements for retaliation are set forth in R.C.2921.05(A), which states: "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness."
 {¶ 15} Fuqua asserts that the court interpreted the term "witness" too broadly and maintains that "the wording of the statute is in the past tense, i.e.[,] discharged, and thus[,] the intent of the Legislature was that the witness had been called, sworn and testified at the judicial proceeding for which judgment had been rendered on the underlying offense." We disagree.
 {¶ 16} We are mindful that we are to construe criminal statutes strictly against the state.[1] However, in interpreting a statute, we must first look to terms within the statute to determine if they are clear and unambiguous.[2] If the terms are clear and unambiguous, there is no need for statutory construction; we must simply apply the statute.[3] Absent ambiguity, a court need not look further, and the legislative intent governs the court's interpretation of the statute.[4]
Moreover, when the General Assembly enacts a statute, "it is presumed that * * * [a] just and reasonable result is intended."[5]
Accordingly, statutes must not be interpreted so as to produce "nonsensical results which are unjust, unreasonable, and contrary to the spirit of the statute and public policy."[6]
 {¶ 17} "It has long been the rule that statutes relating to the same subject matter should be construed in pari materia."[7] Because R.C. 2921.05 (retaliation) and R.C. 2921.03 (intimidation) relate to the same general subject matter, they are generally construed together.[8]
If the statute is ambiguous, however, the court may look to other sources, such as the legislative history or laws dealing with the same or similar subjects, to determine the intention of the legislature.[9]
 {¶ 18} The Second District Court of Appeals has summarized the legislative purpose of R.C. 2921.05(A) as follows: "The statute at issue, which was introduced as H.B. 88 on February 1, 1995, was described as expanding current law concerning intimidation to include retaliation. Ohio Legislative Service Commission, Summary of Discussion on H.B. 88, House Judiciary and Criminal Justice Committee, October 4, 1995. In addition, the distinguishing characteristic between intimidation and retaliation was said to be that intimidation occurs before a judicial decision, whereas retaliation occurs after a judicial decision has been rendered. Id. The retaliation statute, therefore, was intended to correspond to the intimidation statute in its effect, save that it is applicable only after judgment has been rendered on the underlying offense."[10]
 {¶ 19} For purposes of the intimidation statutes, such as R.C.2921.04(B), which provides that no person shall attempt to influence, intimidate, or hinder a witness in the discharge of his or her duties in a criminal action or proceeding, the term "witness" has been defined as a person who has factual knowledge relevant to the issues involved in a proceeding.[11] The word also has been more broadly defined to include one who is "cognizant of something by direct experience."[12]
Moreover, since this statute was designed to protect people who either see, hear, or even may know material facts concerning a criminal activity that could become the subject of a criminal prosecution, all those persons whom the defendant is aware may testify against him are within its ambit.[13]
 {¶ 20} As mentioned previously, under Fuqua's interpretation of R.C. 2921.05(A), a civil or criminal matter would have to proceed to trial, and the witness would have to take the witness stand at trial and testify as a predicate to liability under R.C. 2921.05(A). Based upon the foregoing discussion, however, we find that the rules that guide our interpretation of statutory language support the conclusion that the terms and concept of a "witness" having "discharged [his or her] duties" within the statute are not limited to those circumstances in which a subpoenaed witness has appeared and testified at trial. To require otherwise would lead to unjust, unreasonable results, which are contrary to the spirit of the statute and public policy. It would be nonsensical to hold that one could avoid the purviews of the statute by merely pleading guilty to the offense. As mentioned previously, the statute was designed to protect the sanctity of the judicial process and those that participate within it, regardless of the outcome of the proceedings.
 {¶ 21} Moreover, there is ample evidence supporting the finding that Smith had discharged his duties as a witness in this case. Although Fuqua claims that Smith failed to appear on the scheduled date and time of the trial, Smith testified that he had been subpoenaed to testify and was prepared to do so the day of trial. While he was not at the courthouse when proceedings began at 9:00 a.m., he testified that the State requested he be prepared to appear at 1:00 p.m. and had agreed to contact his attorney in the event that his services would not be needed. Smith was in contact with his attorney around 10:30 a.m. and was then informed that he need not appear due to the entry of a plea in the case. Accordingly, Fuqua's assignment of error is overruled.
 {¶ 22} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Hardin County Common Pleas Court is hereby affirmed.
Judgment affirmed.
SHAW, P.J., and HADLEY, J., concur.
[1] See R.C. 2901.04(A); State v. Gray (1992), 62 Ohio St.3d 514,515.
[2] State ex rel. Jones v. Conrad (2001), 92 Ohio St.3d 389, 392.
[3] Id.
[4] See State ex rel. Fenley v. Ohio Historical Society (1992),64 Ohio St.3d 509, 511; R.C. 1.49.
[5] Fox v. Bowling Green (1996), 76 Ohio St.3d 534, 538; R.C.1.47(C).
[6] Id.
[7] State v. Lambert (June 5, 1998), Montgomery Appeal No. 16667, dismissed, appeal not allowed by 84 Ohio St.3d 1503, citing Warner v.Ohio Edison Co. (1949), 152 Ohio St. 303, 307.
[8] Lambert, supra.
[9] R.C. 1.49.
[10] Lambert, supra.
[11] See, e.g., State v. Lieberman (1961), 114 Ohio App. 339; State v.Maynard (March 16, 2000), Cuyahoga App. No. 75722,; State v. Hudson (June 30, 1982), Summit App. No. 10491, unreported.
[12] Maynard, supra, quoting State v. Crider (1984),21 Ohio App.3d 268.
[13] Id.