[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 534.]

FOX, APPELLEE, *v.* CITY OF BOWLING GREEN ET AL., APPELLANTS.

[Cite as *Fox v Bowling Green*, 1996-Ohio-104.]

*Employment relations—Whistleblower protection—It is sufficient that an employee had a reasonable belief that a co-worker violated a statute, city ordinance, work rule, or company policy to gain protection of R.C. 4113.52(A)(3).*

To gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred.

(No. 94-2544—Submitted January 24, 1996—Decided September 4, 1996.)

APPEAL from the Court of Appeals for Wood County, No. 94WD009.

———————

{¶ 1} Prior to June 1992, appellee William A. Fox was a lieutenant in the appellant city of Bowling Green's police department, where he was assigned as municipal court officer and division property officer in charge of cataloging and storing evidence and property brought in by police officers. Sometime in April or May 1992, Captain Thomas Votava, the administrative officer who assists the police chief, told Fox to arrange for the disposal of outdated tear gas canisters which were stored in the public armory.

{¶ 2} Fox began making inquiries about the disposal of the tear gas canisters. He contacted two landfills and learned that the landfills could not accept the materials because of regulations on their disposal. Fox also contacted a company in Findlay, Ohio which specialized in the disposal of hazardous materials and was informed that the approximate cost of disposing of the materials was $55 per unit and that a permit was required to dispose of the materials. Furthermore,

the company told Fox that disposal had to be made a mile-and-a-half away from people and suggested that a quarry site be found. The Findlay company later informed Fox that it could not find a safe site for the disposal, and asked Fox if he would try to find one. Fox reported this information to Captain Votava.

{¶ 3} On June 4, 1992, Fox learned that a woman had called the Bowling Green police complaining of "gun shots" and a cloud of some substance in the air near the city armory. Fox learned or overheard from the dispatchers that Captain Votava and another officer were shooting off tear gas canisters.

{¶ 4} Captain Votava and Lieutenant Thomas Brokamp testified by deposition that they had removed several tear gas canisters from the armory and took them to a vacant field behind the public service garage used by the street department. The local airport, the city service building, a recycling center, and a trailer park were all nearby. Captain Votava and Lieutenant Brokamp discharged the tear gas canisters either by throwing them, shooting them from gas guns, or shooting at them with their service revolvers. After all the canisters were empty, Captain Votava and Lieutenant Brokamp picked up all the casings, put them in a trash bag and returned to police headquarters, where they deposited the empty casings into the trash dumpster.

{¶ 5} On June 5, 1992, Fox prepared a written report in which he noted his concern about the method of tear gas disposal chosen by Captain Votava and Lieutenant Brokamp. Fox personally presented his written report to Bowling Green's safety director, Colleen Smith, and told her that he was afraid that, as property officer, he could be held responsible for the removal of the tear gas canisters. Furthermore, Fox told the safety director that he believed some laws may have been violated in the disposal of the canisters.

{¶ 6} The safety director contacted the chief of police, Galen Ash, to inquire into the disposal of the tear gas. The chief had approved the plans to destroy the tear gas. He told the safety director to contact Captain Votava about the disposal,

and then contacted Fox and told him that he should not concern himself further with the tear gas incident.

{¶ 7} Captain Votava prepared a written report, which was submitted to the safety director and the chief of police. Captain Votava implied that he and Lieutenant Brokamp had done nothing wrong and further stated that Fox was not performing adequately as the property officer. Captain Votava also stated that an EPA official had investigated the incident and advised Votava to discharge the gas in another location "to avoid future complaints."

{¶ 8} Fox submitted a written response to Captain Votava's report and submitted a copy to the safety director and the chief of police. The chief of police called Fox into his office and reprimanded Fox for failing to leave the matter alone as instructed. Fox testified that the chief threatened to assign Fox more duties if Fox persisted in his involvement with the incident.

{¶ 9} The safety director met with Captain Votava and Lieutenant Brokamp and determined that they had done nothing wrong in disposing of the tear gas. Neither officer was disciplined.

{¶ 10} On June 30, 1992, Fox was reassigned to new job duties that were to be effective July 20, 1992. While Fox's rank and pay remained the same, he believed the move was a demotion. Fox now worked the graveyard shift, his duties involved mostly paperwork, and he reported to a sergeant.

{¶ 11} A Bowling Green police officer testified in a deposition that Lieutenant Brokamp had stated that Fox was reassigned because he blew the whistle on the Bowling Green police department. The chief of police, the safety director, and Captain Votava all testified that Fox's reassignment was motivated by a reduction in his duties as court officer rather than in retaliation for his reports about the disposal of the tear gas. All three testified that discussions about changing Fox's assignment had begun prior to June 1992.

**{¶ 12}** Fox filed a grievance regarding his reassignment, and on December 17, 1992, filed a complaint against Bowling Green and its police chief in the Wood County Court of Common Pleas. Fox's complaint alleged that his reassignment violated R.C. 4113.52 (the "Whistleblower" statute) because his reassignment amounted to a disciplinary demotion in retaliation for his "blowing the whistle" on the release of the tear gas. The trial court granted defendants' motion for summary judgment, holding that R.C. 4113.52 requires a showing of an actual violation of law, work rule or company policy, and that Fox had failed to show that the release of tear gas on June 4, 1992 amounted to an actual criminal or work-rule violation. The trial court also held that Fox's reassignment amounted to disciplinary action under the Whistleblower statute.

**{¶ 13}** The appellate court reversed, finding that R.C. 4113.52 (A)(3) requires that the Whistleblower need only show that he had a reasonable belief that the actions of fellow employees were a violation of a law, work rule or department policy. The appellate court ordered the case remanded to the trial court for the trier of fact to properly determine whether Fox reasonably believed that Captain Votava and Lieutenant Brokamp had violated a law, a work rule or department policy in disposing of the tear gas.

**{¶ 14}** This matter is now before this court upon allowance of a discretionary appeal.

_____

*Lucas, Prendergast, Albright, Gibson & Newman*, *James E. Melle* and *Michael D. Bridges*, for appellee.

*Marshall & Melhorn*, *Thomas W. Palmer* and *David L. O'Connell,* for appellants.

*Spater, Gittes, Schulte & Kolman, Kathleen B. Schulte* and *Frederick M. Gittes,* urging affirmance for *amicus curiae*, Ohio Employment Lawyers Association.

4

*John E. Gotherman* and *Malcolm C. Douglas*, urging reversal for *amici curiae*, Ohio Municipal League and Ohio Municipal Attorneys Association.

———————————

**PFEIFER, J.**

{¶ 15} We hold that to gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred.

{¶ 16} Ohio's Whistleblower statute provides an employee protection from employer retaliation under certain circumstances when the employee reports activity of fellow employees in the workplace. R.C. 4113.52(A)(3) provides:

"If an employee becomes aware in the course of his employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of his employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."

{¶ 17} Thus, R.C. 4113.52(A)(3) sets forth what an employee needs to do to fall under the statute's protection for reporting activities of co-workers. This court held in *Contreras v. Ferro Alloy Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, at the syllabus, that an "employee must strictly comply with the dictates of R.C. 4113.52" in order to receive the protection of the statute. The dictates of R.C. 4113.52 are not complete without a consideration of the effect of R.C. 4113.52(B). This court cannot construe R.C. 4113.52(A)(3) in isolation but rather, must

construe it in conjunction with other subdivisions of R.C. 4113.52. R.C. 4113.52(B) provides in pertinent part:

"No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division."

{¶ 18} R.C. 4113.52(B) carries the statute's punch. That part of the statute sets forth what the employer may not retaliate against, and what actions bring about employer liability under the statute. R.C. 4113.52(B) does not require that the information the employee reports is completely accurate as long as "the employee made a reasonable and good faith effort to determine the accuracy of any information so reported." R.C. 4113.52(B) does not exclude the "aware[ness] * * * of a violation" component of R.C. 4113.52(A)(3) from the protection of the "reasonable and good faith effort" requirement.

{¶ 19} Thus, if an employee reports to his employer that a fellow employee is violating a state statute and that the violation is a criminal offense and is likely to cause a hazard to public health, each informational component of that report— the violation, the criminality, and the risk to public safety—is "information so reported" under R.C. 4113.52(B). The reporting employee is protected from retaliation as long as he made a "reasonable and good faith effort to determine the accuracy" of each informational element. That necessarily includes information regarding the violation.

{¶ 20} When the General Assembly enacts a statute, "it is presumed that * * * [a] just and reasonable result is intended." R.C. 1.47(C). To require that an actual violation must occur for a whistleblower to gain protection leads to nonsensical results which are unjust, unreasonable, and contrary to the spirit of the

6

statute and public policy. Under the trial court's interpretation of the statute, each whistleblower would have to become equal parts policeman, prosecutor, judge, and jury. A whistleblower could never be certain that a statute has been *actually* violated until the perpetrator was found guilty in court. Suppose that a dispatcher of a taxi company is told by an on-duty driver that the driver is drunk. The employee believes that the driver does indeed sound intoxicated. Does the dispatcher need to chase down the driver, perform field sobriety, breathalyzer and blood tests before he may report to his supervisor that the driver is driving while intoxicated? The "actual violation" interpretation also begs a variant on the proverbial philosophy question about a tree falling in the forest: Has a statute been violated if no one is arrested and tried for it?

{¶ 21} From a public policy prospective, the "reasonable belief" standard is the only acceptable interpretation of the statute. R.C. 4113.52 was designed to give whistleblowers some protection in Ohio's employment-at-will environment. Prior to the statute, they had no protection. See *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. The public, in turn, relies on whistleblowers for protection. The "actual violation" standard could delay a whistleblower's reporting of a violation which endangers the public safety, or at worst, prevent him from reporting the violation at all. The statute expects a whistleblower to be vigilant, attuned to the public's safety, loyal to his employer, and sometimes even brave—it does not require him to be infallible.

{¶ 22} In the present case, Fox reported that Captain Votava and Lieutenant Brokamp, fellow employees, had improperly disposed of tear gas canisters. Fox testified in deposition that he had contacted a company that specialized in hazardous material disposal and was told that a permit was required to dispose of tear gas. Furthermore, two landfills refused to take the canisters because permits were required for their disposal. Based on that evidence, we find that a trier of fact could conclude that Fox filed his report to the police chief and safety director with

a reasonable and good faith belief that Captain Votava and Lieutenant Brokamp had violated the law or a department policy by setting off the tear gas canisters in the field. We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*

MOYER, C.J., YOUNG, PATTON and COOK, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., concur in part and dissent inpart.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for WIRGHT, J.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for RESNICK, J.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 23} While I concur with much of the reasoning and discussion of the majority, I respectfully dissent from its ultimate judgment because after a review of the record, it appears that the employee in this case did not suffer any damage. I note, with interest, that neither the majority nor the court of appeals suggests what action the trial court should take if, upon remand, the trial court finds that Fox "reasonably believed that Captain Votava and Lieutenant Brokamp had violated a law, a work rule or department policy in disposing of the tear gas."

F.E. SWEENEY, J., concurs in the foregoing opinion.

_____