DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued by the Huron County Court of Common Pleas in a wrongful discharge suit. The matter arises from appellant Scott Behm's former employment with appellees, Progress Plastic Products, Inc. ("PPPI") and Todd Young, PPPI's president. Finding that appellant failed to meet the requirements entitling him to protection as a whistleblower, we affirm the lower court's holding. *Page 2 
 {¶ 2} PPPI is a custom injection molding business that manufactures plastic parts at production facilities in Ohio. Members of the Young family own PPPI, operated by Todd Young ("Young") and his brother. Appellant worked for appellees as a quality control manager in their Bellevue facility from April 2000 to April 2005. His duties included oversight of the quality of the products produced, supervision of inspectors, answering customer complaints, and the oversight of the daily activities in appellees' labs.
 {¶ 3} Appellant claims that in April 2005, appellees laid him off because he previously brought a product issue to management's attention. At the time in question, manufacturing of a product known as a "pad ring" employed an inferior grade "regrind" material contrary to the customer's specifications. The customer, Evenflo, used the pad rings in its "ExerSaucer," a device in which a young child sits suspended, surrounded by toys. Specifically, the pad ring supports the child while she is in the ExerSaucer. Appellant claims that when he persisted with his investigation and criticism of the manufacture of the pad rings, Young threatened to fire him. Appellant asserts that his dismissal a month later was in retaliation for his persistence in the investigation, and not a result of a larger reduction in force, as appellees assert.
 {¶ 4} Following his dismissal, appellant brought an action claiming appellees violated the Ohio Whistleblower statute (R.C. 4113.52) and public policy (R.C. 4112 et seq. and R.C. 4113 et seq.) by wrongfully discharging him. Appellees moved for *Page 3 
summary judgment, and on January 26, 2007, the trial court granted appellees' motion. This appeal followed.
 {¶ 5} Appellant has presented one assignment of error:
 {¶ 6} "The trial court erred to the prejudice of appellant in granting summary judgment to appellee."
 {¶ 7} Appellees have presented a cross-assignment of error:
 {¶ 8} "Behm's failure to meet his burden of proving pretext provides an alternative basis for upholding the judgment."
 {¶ 9} Review by an appellate court of a trial court's decision on motion for summary judgment is de novo. Bonacorsi v. Wheeling LakeErie Ry. Co. 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Civ.R. 56(C) provides that summary judgment may be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327. In deciding whether a genuine issue of material fact precludes summary judgment, a court must adhere to Civ.R. 56(C) and view the evidence in a light most favorable to the nonmoving party. Turner v. Turner (1993), 67 Ohio St.3d 337, 341.
 {¶ 10} Summary judgment places a burden on the moving party. The movant must identify for the court where the record fails to demonstrate a genuine issue of material fact regarding essential elements of the nonmoving party's claims. Dresher v. *Page 4 Burt (1996), 75 Ohio St.3d 280, 293. If this burden is not satisfied, the motion is denied. Id. If the movant satisfies its initial burden, however, then the burden shifts to the nonmovant to present specific facts demonstrating the existence of a genuine issue. Id. Absent such a showing from the nonmovant, the court may grant summary judgment against the nonmoving party. Id.
 {¶ 11} Appellant pursued his claim under the Ohio Whistleblower statute, R.C. 4113.52. Subsection (B) of the statute prohibits an employer from taking disciplinary or retaliatory action against an employee for making a report authorized under subsection (A). Subsection (A), prior to its amendment on May 2, 2006 — and, thus, applicable here — provided:
 {¶ 12} "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute * * *, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. * * *
 {¶ 13} "(A)(1)(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day *Page 5 
following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard." R.C. 4113.52
(2005).
 {¶ 14} Subsection (A)(3) covers violations of fellow employees, and broadens the scope of (A)(1) by including violations of work rules and company policies. Otherwise, the text in subsection (A)(3) is identical to the text in (A)(1). The pertinent part reads:
 {¶ 15} "(A)(3) If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, * * * or any work rule or company policy of the employee's employer * * *." Id.
 {¶ 16} Protection as a whistleblower requires an employee's strict compliance with the dictates of R.C. 4113.52. Contreras v. FerroCorp. (1995), 73 Ohio St.3d 244, 246. See Haney v. Chrysler Corp.
(1997), 121 Ohio App.3d 137, 140. The statute's threshold requirements demand that both: (1) an employee reasonably believed that a statute, work rule, or company policy was violated; and (2) an employee reasonably believed the violation was (a) a misdemeanor which created imminent danger of physical harm, (b) a hazard to public health or safety, or (c) a felony. O'Brien v. Libbey Owens Ford Co., (Oct. 31, 1997), 6th Dist. No. L-96-333 (citing Fox v. Bowling Green, (Sept. 4, 1996), 6th Dist. No. 94WD009). The key to these threshold requirements is the "reasonable belief standard. Fox v. Bowling Green (1996),76 Ohio St.3d 534, 538. "From a public policy prospective, the `reasonable belief standard is the only acceptable interpretation of the *Page 6 
statute." Id. The "reasonable belief standard" requires the reporting employee to make "a `reasonable and good faith effort to determine the accuracy' of each informational element." Id.
 {¶ 17} In an affidavit accompanying his memorandum in opposition to summary judgment, appellant averred that he believed, though he did not know for certain, that appellees' use of the improper material in its manufacturing of the pad rings constituted a criminal violation. He based this belief on his lengthy work experience in the plastics and manufacturing industries and his familiarity with rules and regulations regarding other products, such as children's car seats. The trial court precluded use of appellant's affidavit in its decision. The court concluded that appellant's affidavit conflicted with his prior deposition testimony. See, e.g., Byrd v. Smith (2006),110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 28 (holding that "an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party many not, without sufficient explanation, create a genuine issue of material fact * * *"). We disagree with the trial court's conclusion.
 {¶ 18} The pertinent part of Appellant's deposition testimony appears:
 {¶ 19} "Q. Okay. Did you think that the use of improper material was a criminal offense?
 {¶ 20} "A. I knew it was in a car seat `cause that's regulated by the National Transportation and Safety Board. I wasn't sure as far as when you let into toys and *Page 7 
things, you know, baby carriers so to speak, as far as knowing a criminal thing, no." [emphasis added]
 {¶ 21} Appellant responded to a question regarding his personal belief with an answer as to his positive knowledge. One can believe something is true without knowing that it is. Compare Zaugg v. Toledo FiberglasCredit Union (Oct. 28, 1988), 6th Dist. No. L-87-357. Appellant stated as much in his affidavit. Therefore, we find no contradiction and permit the affidavit to supplement appellant's deposition.
 {¶ 22} We do not reach a conclusion as to whether appellant made a good faith effort to determine if a statute, work rule, or company policy was in fact violated. Appellees only assert that appellant neveridentified a particular statute, ordinance, work rule, or company policy pertaining to the violation. The reasonable belief standard as applied to the first threshold requirement, however, does not demand specific identification of the law, rule, or policy violated, but only a reasonable belief and good faith effort to determine that a violation occurred. See Fox v. Bowling Green (1996), 76 Ohio St.3d 534, 538. Granted, a claimant attempting to prove that he made a good faith effort to determine the accuracy of his suspicions will in many instances identify the specific violated law, rule, or policy. At this threshold stage, however, specificity of the particular violated law, rule, or policy is not required.
 {¶ 23} Specificity of the particular law, rule, or policy violated is appropriately a consideration under the statute's written notice requirement addressed below. Appellees have failed to demonstrate, however, how appellant did not meet his burden for the first *Page 8 
threshold requirement. Consequently, reasonable minds can differ on whether appellant believed that appellees' violated a statue by using an incorrect plastic material. Thus, the first threshold requirement is satisfied.
 {¶ 24} Addressing the second threshold requirement, in at least three sections of appellant's deposition testimony he stated his concern regarding the potential hazard posed by the regrind material used in manufacturing the pad rings. The pertinent sections read:
 {¶ 25} "[M]y concern is the higher the melt flow, the more brittle the product, and that we were jeopardizing little kids in there somewhere along the line."
 {¶ 26} "This stuff was brittle and I was just afraid it wouldn't take much of an impact at all to snap that tab off that holds that kid up and then [the ExerSaucer] tips over, and where do we go from there?"
 {¶ 27} "I was afraid somebody could get hurt."
 {¶ 28} In addition to his statements, appellant also took action, leaving open the question of whether his actions constituted a good faith effort to determine the existence of a safety hazard. Appellant began testing the pad rings in stock in appellees' plants and found that they were of a more brittle quality than the customer approved. He also conducted his own non-scientific experiment, throwing an "approved" and an "unapproved" pad ring up to the ceiling and letting it crash to the floor. Only the unapproved pad ring shattered, supporting appellant's belief of its inferior quality. *Page 9 
 {¶ 29} As the abovementioned deposition testimony and actions demonstrate, sensible minds could differ as to whether appellant reasonably believed the violation constituted a hazard to public health or safety. Both appellant's deposition and his affidavit indicate that he in fact believed that a safety hazard existed. As with the first threshold requirement, therefore, summary judgment is also not appropriate here.
 {¶ 30} Satisfying the threshold requirements, we must now examine whether a genuine issue exists under the statute's notice requirements. R.C. 4113.52 requires two types of notification from a person claiming protections under the statute: oral and written. Focusing on the latter, the statute demands that a person submit a written report with "sufficient detail to identify and describe the violation" to the same supervisor or officer that he orally notified. R.C. § 4113.52(A)(1)(a), (A)(3).
 {¶ 31} Appellant submitted two electronic messages for review. Appellee Young was the sole recipient of the first message, dated March 10, 2005. Message one read as follows:
 {¶ 32} "In speaking with John Becker on Wednesday he commented that he was surprised at how much black car seat regrind we had to use in the Pad Rings. I thought, that's funny, we don't run the car seat in black, so we pulled a couple of samples yesterday and ran Melt Flow tests. We found the material to be a 20 melt (GAF spec is 18, Evenflo spec is 8). It is my fear that you've been using GAF regrind instead of Evenflo regrind. *Page 10 
 {¶ 33} "Because of the test results from yesterday we've put all the in stock pad rings on hold (24105427).
 {¶ 34} "I would like to know what we are going to do about the over 30,000 pad rings that we have already shipped to Evenflo.
 {¶ 35} "Please keep me updated[.]"
 {¶ 36} The second message was delivered on March 14, 2005 to all of the managers at PPPI, including Young. It read:
 {¶ 37} "Attached are Melt Flow Analysis [sic] we've collected on the pad ring samples we have in Bellevue. As the higher the melt flow the more brittle the product I have serious concerns about product that has probably shipped to Evenflo. * * * The attached data does not bode well for this material having been used. We know Evenflo has product in house from 3/2 date codes, I've requested specific samples from that date be sent to Bellevue from Tiffin along with the dates of all product in stock at Tiffin. As you can see from the attached data some dates are missing and I fear they have shipped to Evenflo. We need to decide what to do as speed is of the essence in getting bad product possibly shipped to the customer from reaching consumers."
 {¶ 38} Noticeably absent from either of appellant's the messages to Young was any mention of a violation or even a safety concern. In fact, in appellant's deposition he stated that he did not recall ever expressing in written form a safety concern to anyone at PPPI. The abovementioned messages lacked what the statute demands: sufficient detail to identify and describe a specific safety violation. SeeHaney v. Chrysler Corp.(1997), *Page 11 121 Ohio App.3d 137, 139 (finding that appellant had failed to satisfy the written reporting requirement because of a lack of sufficient detail); Contreras v. Ferro Corp. (1995), 73 Ohio St.3d 244, 247 (detail of report must clearly identify and describe the violation). CompareKeefe v. Youngstown Diocese of Catholic Church (1997),121 Ohio App.3d 1, 6-7 (holding that a genuine issue existed regarding the sufficiency of a written report, which was a letter appellant sent through her attorney to appellee addressing specific allegations). Nothing in appellant's messages distinguishes them from a regular quality control concern characteristic of his quality management position with PPPI. Thus, even reading the two writings together, appellant failed to comply with the statute.
 {¶ 39} Appellant's failure to strictly adhere to the dictates of R.C.4113.52 by not filing a report in the manner required, prohibits him from claiming the protections of the statute. See Contreras v. FerroCorp. (1995), 73 Ohio St.3d 244, 246; Wood v. Dorcas (2001),142 Ohio App.3d 783, 789; Haney v. Chrysler Corp. (1997), 121 Ohio App.3d 137,140. Accordingly, appellant does not qualify as a Whistleblower and his assignment of error is not well-taken.
 {¶ 40} As a result of our holding as to appellant's assignment of error, appellees' cross-assignment of error is rendered moot, and we need not reach the merits of that assignment. We find that the trial court properly granted appellees' motion for summary judgment. *Page 12 
 {¶ 41} On consideration whereof, this court finds that the trial court did not commit error prejudicial to appellant and the judgment of the Huron County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., concur. *Page 1