WOOD, Appellant,

v.

DORCAS et al., Appellees.

[Cite as *Wood v. Dorcas* (2001), 142 Ohio App.3d 783.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–00–1122.

Decided May 18, 2001.

See also, 126 Ohio App.3d 730, 711 N.E.2d 291.

784

*John S. France,* for appellant.

*Keith J. Watkins,* for appellee.

---

SHERCK, Judge.

This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas in favor of an employer in a wrongful termination suit. Because we conclude that the employee's dismissal from his position was not in violation of Ohio's whistle blower protection statutes, we affirm.

In 1987, appellee, Carl F. Dorcas, hired appellant, Douglas M. Wood, to work in his private law office. Dorcas was also employed by the city of Sylvania, Ohio, as its part-time law director. Dorcas's law firm provided municipal prosecutors for the city in the Sylvania Municipal Court. Appellant was assigned to act as assistant municipal prosecutor, working under one of appellee's more senior employees who was designated the chief municipal prosecutor. Shortly after appellant came to the municipal prosecutor's office, the city of Sylvania hired a secretary for the office. Although the secretary was a city employee, she was supervised by the chief municipal prosecutor.

In 1992, appellant came to suspect that the prosecutor's secretary, with the complicity of the chief prosecutor, was falsifying the time cards that she submitted to the city for payment. Acting on this suspicion, appellant commenced an eighteen-month "investigation," during which he amassed a two-hundred-ninety-page binder containing evidence of the secretary and chief prosecutor's purported theft in office. Near the end of 1993, appellant began showing this book to Ohio Highway Patrol troopers with whom he was acquainted from his job.

On December 22, 1993, appellant delivered the book to Dorcas and advised him of his suspicion. Appellant then instigated an investigation of the situation by the Sylvania Police Department. After the beginning of 1994, appellee also acted on the information, appointing a special prosecutor to investigate appellant's allegations. Both investigations resulted in a conclusion that there had been no wrongdoing, as the city finance director had prior to the secretary's employment approved for her a compensatory ("comp") time arrangement.

On April 13, 1994, appellee dismissed appellant as an employee of his private law office and as a prosecutor in the Sylvania Municipal Court.

Appellant sued appellee and the city of Sylvania, alleging wrongful dismissal from his employment, in violation of Ohio's Whistle Blower Protection Act, R.C. 4113.51 et seq. Appellant also alleged a federal Section 1983, Title 42, U.S.Code, civil rights violation. Appellee and the city moved for summary judgment. The city argued that appellant was never an employee and that without city employment none of appellant's claims against it could be sustained. The trial court granted the motion, leaving only the whistle blower and wrongful termination claims against appellee intact. We affirmed that decision. *Wood v. Dorcas* (1998), 126 Ohio App.3d 730, 711 N.E.2d 291.

The matter was then remanded to the trial court for further proceedings. There, appellee again moved for summary judgment. Appellee argued that appellant failed to satisfy the technical requirements of R.C. 4113.52 and was, therefore, not entitled to the protection of the Whistle Blower Protection Act. Appellee also claimed that appellant conducted his investigation in an unreasonable manner and failed to present evidence sufficient to create a triable question

of fact in the face of appellee's evidence that appellant's termination was nonretaliatory. The trial court granted summary judgment solely on the ground that appellant had reported his allegations to an outside authority (an Ohio Highway Patrol Trooper) before he had reported it to appellee, removing appellant from the protection of the Whistle Blower Protection Act.

From this judgment, appellant now brings this appeal, setting forth the following single assignment of error:

"The trial court erred in ruling that under *Contreras v. Ferro Corp.*(1995), 73 Ohio St.3d 244 [652 N.E.2d 940], appellant's whistle blower action pursuant to R.C. 4113.52 was precluded on the basis that meeting between appellant and an Ohio Highway Patrol trooper constituted a 'report' to an 'outside authority'."

■ On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. The motion may be granted only when it is demonstrated "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(E).

■ When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 322–323, 463 N.E.2d 1246, 1249–1250. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186, 1188; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, 519–520, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212.

■ In Ohio, absent an employment contract, an employee is an employee at will and may be terminated at anytime for any lawful reason or for no reason at all. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 102, 19 OBR 261,

263, 483 N.E.2d 150, 153, at fn. 1, citing *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418–419, 344 N.E.2d 118, 121–122. However, an at-will employee may not be discharged or disciplined for reasons violative of a statute or public policy. *Greeley v. Miami Valley Maintenance Contrs.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus. R.C. 4113.52, Ohio's whistle blower statute, prohibits the discharge or discipline of an employee whose acts are protected by its provisions. An employee who is discharged or disciplined in violation of R.C. 4113.52 may bring a statutory cause of action for the violation, a common-law cause of action in tort (a *Greeley* claim), or both. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, paragraph five of the syllabus. In material part, R.C. 4113.52[1] provides:

"(A)(1)(a) If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within his jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which he is engaged.

"(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.

---

1. The version of the statute quoted is that in effect prior to the 1996 Am. Sub. S.B. No. 350 amendments. Not only is this the version of the statute applicable in time to the events which precipitated this suit, but the Supreme Court of Ohio struck down the 1996 amendments in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062.

"* * *

"(B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure accuracy of any information reported under either such division. * * *

"(C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section. If the employee who makes a report under either division fails to make such an effort, he may be subject to disciplinary action by his employer, including suspension or removal, for reporting information without reasonable basis to do so under (A)(1) or (2) of this section."

 For an employee to be afforded protection as a "whistle blower," he or she must strictly comply with the requirements of R.C. 4113.52. An employee who fails to do so is barred from claiming the protections of the statute. *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus.

In the present matter, the trial court concluded that appellant failed to strictly comply with the statute because he had "reported" his suspicions to one or more Ohio Highway Patrol troopers before he had offered his employer an opportunity to investigate and take corrective action. Pursuant to *Contreras* at 248, 652 N.E.2d at 944, the trial court determined that whistle blower protection may be claimed only if an employee informs his employer orally and in writing of the employee's suspicions prior to "reporting the information to outside authorities." Since appellant failed to comply with the statutory requirements in proper order, according to the trial court, he forfeited protection under the statute.

The trial court's reasoning fails in our view. R.C. 4113.52 defines "outside authorities" as (1) a county or municipal prosecutor, (2) a peace officer, (3) the inspector general should he or she have jurisdiction, or (4) any other public officer or agency with regulatory authority over the situation.

The court concluded that appellant's contact with one or more Highway Patrol troopers constituted a "report" to a "peace officer." However, R.C. 4113.51(D) defines a "peace officer" by a reference to R.C. 2935.01, which, in turn, defines a Highway Patrol trooper as a "peace officer" in the context of a trooper's authority pursuant to R.C. Chapter 5503. Except in specific time of civil unrest, R.C. 5503.02(A) defines a patrol trooper's authority as limited to offenses on state property or felonies related to "the driver of or a passenger in any vehicle operated or standing on a state highway." In other words, for a Highway Patrol trooper to have proper authority to investigate a felony theft offense, the crime must have occurred on state property or have been discovered on the highway.

■ More important, however, is the concept of "report." The term is undefined in R.C. 4113.52, but in our view the word, as used in the statute, encompasses more that mere idle conversation. In the context of the whistle blower statute, we believe "report" means delivery of accumulated information to a proper authority with an expectation that such authority will act on the information set forth. It is the act of "involv[ing] outsiders * * * in an investigation of criminal activity," *Contreras* at 249, 652 N.E.2d at 944, before affording the employer the opportunity to take corrective action that defeats the protections of the statute.

■ In the case at bar, it does not appear that appellant's discussions of this matter with the patrol troopers were with the expectation that the officers would take up the cause. Instead, a fair reading of appellant's deposition testimony and the affidavits submitted by the troopers reveals that appellant had no expectation of such a result from these conversations but used them as a sounding board to gauge the effectiveness of his own efforts. Consequently, we do not believe that appellant's conversations with the troopers were sufficiently goal-oriented to constitute a "report" under the statute. Accordingly, appellant correctly asserts that the trial court erred in granting summary judgment because of such a "report."

■ However, a reviewing court cannot reverse a correct judgment simply because the reasons underlying that judgment were erroneous. *Madison v. USF & G Fin. Serv. Corp.* (1997), 118 Ohio App.3d 431, 436, 693 N.E.2d 293, 296, citing *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309–310.

In the trial court, appellee advanced other reasons for granting summary judgment beyond the early disclosure argument. First, appellee argued that appellant's belief that the chief prosecutor and secretary were conspiring to pay the secretary for work she had not performed was not "reasonable" as R.C. 4113.52 requires. According to appellee, appellant, as an attorney and a criminal prosecutor, knew or should have known that to prove any theft offense there must be evidence that property was taken without the consent of its owner.

In this case, appellee argued that the wages appellant claimed that the secretary misappropriated belonged to the city of Sylvania. At no time, appellee pointed out, during the span of appellant's eighteen-month investigation, did appellant bother to ask the city's finance director or anyone else with municipal authority whether the secretary's comp-time pay scheme had been authorized. Appellee contends that had appellant made this simple, yet fundamental, inquiry he would have discovered that his suspicions were without merit. Absent

employment of such a basic investigatory technique, appellant's suspicion was not "reasonabl[e]" and, therefore, not entitled to protection under the statute.

Appellee also maintained in his summary judgment motion that appellant's termination from employment was not a retaliatory discharge but was for legitimate business purposes. Appellee specifically cited appellant's poor work performance and insubordination. Appellee supported this contention with his own affidavit, enumerating numerous complaints received about appellant's performance, instances of appellant's refusal to comply with his employer's directions, and disruptions in the business place due to appellant's behavior.

Having set forth these specifics, appellee argued, pursuant to Civ.R. 56(E), that the burden shifted to appellant to come forth with evidence sufficient to create a question of fact as to whether the reasons for his termination by appellee were pretextual. According to appellee, appellant failed to meet this burden.

■ With respect to the reasonableness of appellant's suspicion, what constitutes "reasonableness" is ordinarily a question of fact. *Greater Cleveland Regional Transit Auth. v. Ohio Civ. Rights Comm.* (1989), 58 Ohio App.3d 20, 24, 567 N.E.2d 1325, 1328–1329. Since this is a material element of the Whistle Blower Protection Act, summary judgment would be precluded on this issue.

■ The question of retaliation is more problematic. The whistle blower statute was never intended to protect the incompetent employee or an employee who evades the responsibilities for which he or she was hired. R.C. 4113.52 protects only employees who are disciplined or discharged because of their protected whistle blower activity. The party seeking protection of the statute must show that he or she was disciplined in retaliation for a protected act.

■ In the context of a motion for summary judgment, the presentments required in a whistle blower case are no different from those in any other retaliatory discharge suit. See *Chandler v. Empire Chem.* (1994), 99 Ohio App.3d 396, 400, 650 N.E.2d 950, 952–953; *Wright v. Petroleum Helicopter* (Sept. 18, 1997), Cuyahoga App. No. 71168, unreported, 1997 WL 578939. The plaintiff must first make a prima facie case by showing that (1) he or she engaged in activity which would bring him or her under the protection of the statute, (2) was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Id.*, citing *Cooper v. N. Olmsted* (C.A. 6, 1986), 795 F.2d 1265, 1272.

■ When the plaintiff has established a prima facie case, the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for the action taken. Should the employer be able to state a nonretaliatory reason for the

action taken, the burden then returns to the plaintiff to come forward with some evidence to show that the employer's stated reason was, in fact, a pretext. *Chandler, supra.*

In the present matter, appellant showed that he engaged in activity that would arguably bring him under the protection of the whistle blower statute. There is no question that he was discharged from his employment. Moreover, his discharge came within close proximity of the time his whistle blower allegations were discredited. Absent more, it would be a permissible inference that there was a causal relationship between appellant's whistle blower activity and the job action against him.

Appellee, however, responded with his own affidavit and supporting documents, in which he enumerated numerous conflicts between appellant and co-workers, court personnel, attorneys, and citizens. These events dated back nearly to appellant's hire date. Additionally, appellee pointed to appellant's own deposition testimony in which he admitted to falling behind in his legal work and conceded that on more than one occasion he had disobeyed directions from either appellee or appellant's immediate supervisor.

Appellant's response to this evidence was not to deny the incidents of misconduct but to explain that each episode had previously been resolved. With respect to appellant's lack of timely completion of his work and his disobedience of his supervisor's directives, appellant opined that, because of the provisions of the Whistle Blower Protection Act, his responsibility to investigate his co-workers superseded his responsibility to his employer. As for evidence of his employer's retaliatory motive, appellant could point to no more than the coincidence of timing between the resolution of his theft allegations and his discharge.

Appellant became focused on proving that his immediate supervisor and the secretary in the prosecutor's office conspired to steal government time. In his attempt to substantiate this suspicion, appellant devoted substantial energy over eighteen months, amassing hundreds of pages of documents and dozens of notebooks full of notes. Whether it was because of the considerable time necessary to sustain this investigation, his own lack of organization, or something else, it is unrefuted that appellant fell behind in the performance of the work for which he was hired. It is also unrefuted that, throughout his employment with appellee, appellant had numerous conflicts with those with whom he had contact. Finally, after he had delivered his "whistle blower notice," appellant came to believe that the statute would protect him, even from the direct disobedience of a proper order.

Any of these behaviors might have formed the basis for his discharge. Taken together, they form a powerful reason to discharge appellant. Consequently, appellee has stated a nonretaliatory reason to discharge appellant from his employment.

Because appellee stated nonretaliatory reasons for appellant's dismissal, the burden then shifted to appellant to submit evidence that these reasons are pretextual. The only evidence that he came forward with was the coincidence of the timing of his dismissal. This is insufficient for appellant to meet his burden. *Shutt v. Rudolph Libby, Inc.* (Mar. 31, 1995), Wood App. WD–94–063, unreported, citing *Renfroe v. Ashley* (1958), 167 Ohio St. 472, 5 O.O.2d 154, 150 N.E.2d 50, syllabus.

Appellant failed to submit evidence sufficient to demonstrate a triable question of fact on the whistle blower issue and appellee is entitled to judgment as a matter of law. Absent a statute or articulated policy upon which to base a *Greeley* claim, this count also fails.

Accordingly, appellant's single assignment of error is not well taken.

Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

PIETRYKOWSKI, P.J., and HANDWORK, J., concur.