[Cite as *Bennett v. Columbiana Cty. Coroner*, 2016-Ohio-7182.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SUSAN BENNETT | ) | CASE NO. 14 CO 0039 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| COLUMBIANA COUNTY | ) | |
| CORONER, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Columbiana County, Ohio Case No. 2012 CV 00343

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellant: Atty. Brian D. Spitz
Atty. Fred M. Bean
The Spitz Law Firm, LLC
4620 Richmond Road, Suite 290
Warrensville Heights, Ohio 44128

For Defendants-Appellees: Atty. James A. Climer
Atty. Frank H. Scialdone
Mazenec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: September 30, 2016

WAITE, J.

**{¶1}** Appellant Susan Bennett timely appeals the decision of the trial court which granted summary judgment in favor of the Columbiana County Coroner, William Graham, Jr., M.D.; Columbiana County; Columbiana County Board of Commissioners Office; Columbiana County Auditor's Office and Columbiana County Coroner's Office (collectively, "Appellees"). Appellant raises five assignments of error, asserting summary judgment was inappropriate because: she established a *prima facie* case showing whistleblower retaliation pursuant to R.C. 4113.52; there are genuine issues of material fact regarding her whistleblower retaliation, constructive discharge and intentional infliction of emotional distress claims; and genuine issues of material fact remain regarding Dr. Graham's individual immunity.

**{¶2}** Based on the following, the trial court did not err in granting summary judgment in favor of Appellees on Appellant's claims for whistleblower protection under R.C. 4113.52, constructive discharge, intentional infliction of emotional distress and the immunity of Dr. Graham. Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

## Factual Background

**{¶3}** For purposes of this appeal, which is before us pursuant to the trial court's decision to grant a motion for summary judgment, we look to Appellant's version of the relevant facts. Appellant began employment as an executive secretary and bookkeeper with the Columbiana County Coroner in 2006. Her job duties included receptionist, bookkeeping and general housekeeping.

**{¶4}** Appellant worked alongside Brian Fullum ("Fullum") during a portion of her tenure at the coroner's office. Fullum was a coroner's investigator who also had complained about certain conduct by Dr. Graham which allegedly occurred during the time Fullum was employed by the coroner's office. Fullum filed an employment law action against Columbiana County Coroner's Office and Dr. Graham, Columbiana County Case No. 2011 CV 00806. The matter has already been decided by this Court. See *Fullum v. Columbiana County Coroner, et al.,* 2014-Ohio-5512, 25 N.E.3d 464 (7th Dist.). Appellant filed her deposition transcript from the *Fullum* matter in the instant case ("Appellant *Fullum* Depo.").

**{¶5}** Based on issues arising out of her employment, Appellant initiated the present suit against Appellees on May 21, 2012. Appellant asserted three causes of action against Appellees: retaliation in violation of R.C. 4112.52, retaliatory constructive discharge, and intentional infliction of emotional distress. Appellees filed a joint answer, denying Appellant's claims and raising a number of defenses, including immunity.

**{¶6}** The basis for Appellant's claims are five complaints she made concerning Appellees' conduct during her tenure with the coroner's office. Appellant only addresses three of those complaints on appeal, and so has waived any argument regarding the two remaining complaints. Hence, the trial court's decision as to those is affirmed.

**{¶7}** For the sake of clarity, we will use the same labels applied by the trial court in addressing each of the incidents Appellant discussed on appeal.

## Wagner Death Certificate

**{¶8}** The first incident, labeled by the trial court as the "Wagner Death Certificate," occurred about one year after her employment with the coroner's office began. Mr. Wagner was involved in an automobile accident in Columbiana County which resulted in severe injuries and ultimately lead to his death. Appellant alleges that the fire dispatcher on duty failed to order a helicopter life flight as was directed by emergency responders. Two days after Mr. Wagner's death, Appellant reported to Dr. Graham verbally her belief that the delay and failure to order a life flight contributed to Wagner's death and that this was not reported on the death certificate. In her deposition, Appellant stated, "I told him I had concerns about Mr. Wagner's death and that - - and I told him that I had contacted both fire departments * * * and I said it seemed odd that this gentleman with those - - with that degree of injury, was not Life Flighted to a trauma center and so I told him my concerns." (Bennett Depo., p. 23.) Once Dr. Graham was notified, according to Appellant's deposition, he asked another staff member to get a copy of the log of the incident from Lisbon dispatch. Appellant also stated that the staff member obtained the log report and spoke to the dispatcher who had been on duty and that all of this information was reported back to Dr. Graham. (Bennett Depo., pp. 25-27.)

**{¶9}** Appellant stated that after Mr. Wagner's autopsy report came back from Cuyahoga County she reviewed the report. When the final death certificate issued she was dissatisfied that the cause of death was not attributed to delay in treatment and again spoke with Dr. Graham about her concerns. (Bennett Depo., pp. 27-28.)

Dr. Graham indicated that in his opinion, delay was not a factor. (Bennett Depo., p. 28.)

{¶10} She then raised the issue during a meeting she arranged with the Columbiana County Board of Commissioners and county auditor on August 24, 2011. She followed up her meeting with these officials with a written letter to Dr. Graham on September 1, 2011. Appellant also met with the Ohio Bureau of Criminal Investigation (BCI) on September 28, 2011 regarding her concerns.

{¶11} Appellees contend that Dr. Graham conducted an investigation of the incident after being notified by Appellant and concluded the alleged delay had no bearing on Mr. Wagner's cause of death. Appellees also contend Appellant did not comply with the written notice requirement set forth in R.C. 4113.52 before arranging a meeting with the Columbiana County Board of Commissioners and county auditor.

## Pistol in Office

{¶12} A suicide occurred in 2008 which involved a World War II era Luger handgun. According to Appellant's deposition in the *Fullum* case, the office manager, Fran Rudibaugh, was interested in giving the gun to Dr. Graham as a gift. (Appellant *Fullum* Depo., pp. 69-70.) Appellant also stated that it was Fullum who originally brought the gun into the office and gave it to Rudibaugh in a paper bag where it sat for about three weeks before Rudibaugh presented it to Dr. Graham. (Appellant *Fullum* Depo., pp. 69-70.) Appellant discussed the issue with Fullum when he first brought the gun and said that she did not know where the gun was stored until Rudibaugh presented it from under her desk to Dr. Graham, some three

weeks later. (Appellant *Fullum* Depo., pp. 69-71.) In her deposition in this case, Appellant stated that after being presented with the gun, Dr. Graham said, "[s]o how are we going to steal this?" (Bennett Depo., p. 47.) Appellant did not discuss the issue with Dr. Graham or at the August 24, 2011, meeting with the commissioners as, approximately three weeks after Dr. Graham was presented with the gun, Appellant went to the sheriff's office to inquire about the location and custodial history of the gun. Appellant testified that after that, "the county prosecutor called [Appellant] and told [Appellant] to tell [Dr. Graham] to surrender the gun to the sheriff's department." (Appellant *Fullum* Depo., p. 74.) Appellant discussed the gun incident in the written letter to Dr. Graham dated September 1, 2011.

{¶13} Appellees point out that the gun was ultimately found in the evidence locker at the Salem Police Department. They argue that, again, Appellant failed to comply with all of the reporting requirements of R.C. 4113.52.

### Altered Death Certificate

{¶14} Appellant's third complaint against Dr. Graham related to a death certificate that was allegedly altered. Appellant claims she was given a death certificate to mail listing the cause of decedent's death as accidental due to his fall from a bed at Salem Community Hospital. She contends that after the certificate was processed and mailed, Rudibaugh complained to her that the hospital would be sued and that approximately two weeks later, Dr. Graham issued a second, supplemental death certificate listing the cause of death as "natural." This second death certificate did not contain any information regarding the patient's fall from the hospital bed.

Appellant acknowledged in her deposition that she never asked Dr. Graham or any other supervisor for a reason why the supplemental death certificate was issued (Bennett Depo., p. 64.) Appellant also acknowledged that she never made a written complaint to Dr. Graham or any other supervisor about the supplemental death certificate. (Bennett Depo., p. 64.) Appellant never investigated the legality of issuing a supplemental death certificate. The first time the issued was raised by Appellant was during the August 24th meeting with the commissioners and auditor. It was also discussed in her September 1, 2011 letter to Dr. Graham and again with BCI on September 28, 2011.

**{¶15}** Appellees contend in their brief that the death certificate at issue was not altered, but was supplemented with Dr. Graham's revised opinion on the matter. Once again, Appellees state that Appellant did not comply with the requirements of the Whistleblower statute.

**{¶16}** Appellant alleges in her complaint that she spoke to Dr. Graham during and after each of the above events. She also asserts that after complaining to Dr. Graham, she and Fullum both met with the commissioners and county auditor on August 24, 2011 to voice their allegations of wrongdoing. Appellant contends that she reported this conduct, in writing, to the Columbiana County Sheriff's Department on September 16, 2011 and then informed BCI of her complaints on September 28, 2011.

**{¶17}** Appellant claims that after reporting her complaints to the commissioners and auditor and filing subsequent written reports to the other entities,

she began to experience retaliation in the workplace. She raises the following as evidence of retaliation: that she was locked out of her computer at her desk and her work hours were reduced from 32 hours per week to 10. Because of this reduction in work hours, her health insurance benefits were eliminated. Based on this alleged retaliatory conduct, Appellant says she was ultimately forced to resign, which she did by attending a public meeting of the Columbiana County Board of Commissioners on February 8, 2012 and reading her letter of resignation during the public comment period.

**{¶18}** Appellant filed her complaint herein on May 21, 2012, naming as defendants the Columbiana County Coroner and Dr. William Graham. The complaint contained three counts and sought unspecified compensatory and punitive damages. Count one alleged retaliation in violation of R.C. 4113.52, Ohio's Whistleblower statute; count two alleged retaliatory constructive discharge; and count three alleged intentional infliction of emotional distress. An amended complaint was filed on December 20, 2012, joining as additional defendants the Columbiana County Board of Commissioners, Columbiana County Auditor's Office and Columbiana County Coroner's Office.

**{¶19}** Appellees filed a joint answer to the amended complaint on January 14, 2013, denying all of Appellant's allegations and raising a number of defenses, including immunity, statute of limitations and failure to state a claim. On April 4, 2013, Appellees filed a motion seeking summary judgment. Appellees argued that all claims against the Columbiana County Board of Commissioners Office, Columbiana

Coroner's Office and Columbiana Auditor should be dismissed as those entities were not capable of being sued, and that all of Appellant's claims arose out of the employment context and those entities were not Appellant's employer. Appellees further alleged that Appellant did not comply with the mandatory procedures found in R.C. 4113.52 and so, could not seek protection under the statute. Lastly, Appellees asserted that any alleged conduct by Appellees was in furtherance of a legitimate business activity and that Appellant's work environment did not rise to the level necessary to find a constructive discharge occurred.

{¶20} Appellant filed her response to the motion for summary judgment on May 3, 2013. Appellant stated that she was a bookkeeper with the coroner's office, working 32 hours per week. Appellant alleged that she was forced to resign from her employment on February 8, 2012 as a result of retaliatory conduct by Appellees. Appellant also asserted that she sought medical care prior to her resignation due to Appellees' alleged retaliatory conduct. Appellant attached her own affidavit to the motion in opposition to the summary judgment. In it, she states that she was an employee of Columbiana County and that she was on the county payroll, and she followed the policies and procedures set forth in the Columbiana County Employee Handbook. (Bennett Aff., ¶ 1-4). She also stated that she witnessed a number of "illegal" and "safety" violations by Dr. Graham and reported these to him. (Bennett Aff., ¶ 5-6.) Appellant outlined the timeline and manner in which she reported each of the alleged violations to Dr. Graham, as well as to the commissioners, the auditor and BCI. (Bennett Aff., ¶ 7-8, 10, 19-21.) She also listed a number of alleged

retaliatory measures taken by Dr. Graham regarding her employment with the coroner's office which she contends necessitated her resignation, including blocking her from accessing her work computer and reducing her work hours from 32 to 10 hours per week which, in turn, eliminated her county healthcare benefits.

{¶21} On August 14, 2014, the trial court filed a judgment entry granting summary judgment to Appellees. The trial court noted that in her amended complaint Appellant referred to "criminal and/or ethical violations" and in her motion in opposition to summary judgment she referred to "illegal and/or safety" violations. The court stated that the "and/or" language indicated Appellant was unsure whether a violation had occurred for purposes of R.C. 4113.52. The trial court next concluded that even if Appellant had been able to establish a violation of a law or regulation, she was required to prove that the violation was likely to increase "*imminent* risk of physical harm to persons or is a hazard to public health or safety or were felonies." (Emphasis sic.) (8/14/14 J.E.) Ultimately, the trial court concluded that even when considering the evidence in a light most favorable to Appellant, there was not "a scintilla of evidence that the acts complained of were likely to cause an imminent risk of physical harm to persons OR hazard to public health or safety OR were felonies." *Id.*

{¶22} Appellant subsequently filed this timely appeal.

### Standard of Review

{¶23} On a motion for summary judgment, a reviewing court conducts a *de novo* review of the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d

102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion which is adverse to the nonmoving party with the evidence construed strongly in favor of the nonmoving party. *Horton v. Hardwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

{¶24} The moving party has the burden of demonstrating that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293; 662 N.E.2d 264, 273-274 (1996). The moving party cannot rely solely on conclusory assertions, but must directly cite to specific evidence which affirmatively demonstrates the nonmoving party lacks evidence to support its claims. *Id* at 293. Permissible evidentiary materials include pleadings, depositions, answers to interrogatories, stipulations, affidavits and transcripts of evidence. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). If the moving party fails to meet its initial threshold burden, the motion for summary judgment must be denied. If the moving party satisfies its initial burden, the nonmoving party must then meet its reciprocal burden set forth in Civ.R. 56(E) to establish specific facts demonstrating genuine issues of fact exist sufficient to warrant proceeding to trial. If there is no genuine issue as to any material fact, summary judgment is appropriate and the moving party is entitled to judgment as a matter of law. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶25} Appellant's first two assignments of error relate specifically to R.C. 4113.52, known as Ohio's Whistleblower statute.

ASSIGNMENT OF ERROR NO. 1

The Trial Court Committed Reversible Error In Determining That Bennett Failed To Meet Her Prima Facie Case For Whistleblower Retaliation Under R.C. § 4113.52.

ASSIGNMENT OF ERROR NO. 2

The Trial Court Committed Reversible Error In Determining That No Genuine Issues Of Material Fact Remained Regarding Bennett's Whistleblower Retaliation Claim.

{¶26} In her first two assignments, Appellant contends she satisfied the requirements of R.C. 4113.52 and established a *prima facie* case for whistleblower retaliation and that genuine issues of material fact remain, precluding summary judgment.

{¶27} R.C. 4113.52(A)(1)(a) provides:

If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the

employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

**{¶28}** R.C. 4113.52(B) governs retaliatory conduct by an employer:

Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making any

report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division. For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:

(1) Removing or suspending the employee from employment;

(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;

(3) Transferring or reassigning the employee;

(4) Denying the employee a promotion that otherwise would have been received;

(5) Reducing the employee in pay or position.

{¶29} In *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 248-249, 652 N.E.2d 940 (1995), the Ohio Supreme Court addressed the requirements for the Whistleblower statute:

Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation both

orally and in writing. An employee who fails to provide the employer with the requested oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities. If the employee provides the employer with oral notification and a written report, the employee may be entitled to the protections of the whistleblower statute for reporting the information to outside authorities only if the employer has failed to correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier. R.C. 4113.52(A)(1)(b) contemplates that the employer will apprise the employee of its efforts to correct the violation. That provision mandates that if an employee makes a report to his or her employer under R.C. 4113.52(A)(1)(a), the employer, within twenty-four hours after the oral notification was made or the report received or by the close of business on the next regular business day, whichever is later must provide written notice to the employee of any efforts the employer made to correct the alleged violation or hazard or of the absence of the alleged violation or hazard. Only after all these various procedures and requirements have been satisfied, and only if the employer has not corrected the violation or made a reasonable and good faith effort to correct the violation may the employee report the

violation to outside authorities—but only those authorities specified in R.C. 4113.52(A)(1)(a).

Therefore, to restate, R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may "blow the whistle" to outside authorities. * * * An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52. (Emphasis and footnote omitted.)

{¶30} Moreover, the employee must strictly comply with the requirements of R.C. 4113.52 in order to be afforded protection as a whistleblower. *Id.* at syllabus.

{¶31} Appellant contends she conformed to all the reporting requirements and informed her employer of her complaints. Appellant directs this Court to her verbal statements to Dr. Graham, the written memorandum to Dr. Graham dated September 1, 2011, as well as her various meetings with the commissioners, auditor, BCI and FBI.

**{¶32}** Appellees argue that the written memorandum to Dr. Graham came only after Appellant notified the commissioners and auditor at an open meeting. Since they are outside entities and not her employer, this precludes Appellant from seeking whistleblower protection. Moreover, Appellees argue that Appellant's complaints do not rise to the level of a "violation" pursuant to R.C. 4113.52. Finally, Appellees also argue that any employment actions concerning Appellant's terms and conditions of employment were taken for legitimate, non-retaliatory reasons.

**{¶33}** Prior to examining whether Appellant adhered to the reporting requirements of the statute, there must be a threshold examination as to whether Appellant established "violations" as defined in R.C. 4113.52(A)(3). Again, that provision states:

> If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a

written report that provides sufficient detail to identify and describe the violation.

**{¶34}** The Ohio Supreme Court noted in *Fox v. Bowling Green,* 76 Ohio St.3d 534, 668 N.E.2d 898 (1996), that "an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred." *Id* at syllabus.

**{¶35}** Furthermore, pursuant to the court's holding in *Fox*, in order for an alleged whistleblower to avail herself of statutory protection, she must believe the violation is: (a) a criminal offense that is likely to cause either: (i) an imminent risk of physical harm to persons or (ii) a hazard to public health or safety, or (b) a felony. *Id.* The employee at issue in a whistleblower case must make a "reasonable and good faith effort to determine the accuracy" of each informational element of the reports. Those elements are (1) the alleged violation, (2) its nature as a criminal offense, and (3) whether it poses an imminent risk of harm to persons or public health or safety. *Id.* at 538; R.C. 4113.52(B).

**{¶36}** Appellant seeks whistleblower protection and bases her appeal on the concerns she expressed regarding Dr. Graham's activities as county coroner. The information Appellant claims to have reported as well as the chronology of her reporting is demonstrably different from the evidence in the record. First, Appellant asserts that she adhered to the reporting requirements of the statute by informing Dr. Graham of her concerns in all three incidents. Appellant cites to her written letter to

Dr. Graham dated September 1, 2011, and to her own affidavit where she states she verbally informed Dr. Graham of all of the incidents.

**{¶37}** Even viewing the evidence in her favor for purposes of summary judgment, the evidence cited by Appellant is problematic. The September 1, 2011 letter to Dr. Graham does not assist Appellant in her whistleblower claim, as it was drafted after Appellant bypassed her department and met with the county entities to air all of her concerns. Pursuant to R.C. 4113.52, a purported whistleblower must bring concerns of criminal wrongdoing to their supervisor or other responsible officer and provide a written report detailing their concerns.

**{¶38}** Regarding the Wagner death certificate, Appellant's deposition testimony indicates she informed Dr. Graham of the Wagner delay in transfer two days after Wagner's death and that Dr. Graham investigated the matter, including obtaining reports and information on the run dispatch. Dr. Graham ultimately concluded no error had occurred. Apparently unsatisfied with this answer, and admittedly without seeking any qualified medical opinion on the matter, Appellant chose to take her concerns to an arranged meeting with county officials. It was only after that meeting that she drafted the letter to Dr. Graham. The letter itself does not allege any illegal activity or indicate that Appellant thought a crime had occurred, but says only that: "my concern that a delay in medical treatment as a contributing cause of death was not included on the Death Certificate." (9/1/11 Letter.) Clearly, this record does not support Appellant's contentions that she be regarded as a whistleblower. Her own deposition underscores that at least at the time she initially

raised her concerns with Dr. Graham, neither she nor Graham could have had any indication that Appellant believed a criminal violation had occurred, much less that the behavior addressed presented an imminent risk of physical harm to anyone or a hazard to health or safety. Merely telling a doctor that it was "odd" the decedent was not life flighted cannot be seen as rising to the level necessary to seek protection of the statute. Thus, the trial court's determination to this incident is correct.

**{¶39}** Regarding the pistol incident, Appellant similarly contends that she informed Dr. Graham and included it in her September 1, 2011 letter. In her deposition in the *Fullum* matter, Appellant testified that she "didn't know [the gun] was there until the day [Rudibaugh] went to get it to present it to Dr. Graham" and that she never saw the gun until it was presented to Dr. Graham. (Appellant *Fullum* Depo., pp. 67-68.) Also in the *Fullum* deposition, Appellant testified that she asked Fullum what was in the bag when he brought the gun in and took no further action until the gun was presented to Dr. Graham. Appellant's deposition testimony in the *Fullum* case reflects that about three weeks later she went to the sheriff's department to ask them for the paperwork verifying that they had custody of the gun. Appellant wrote in her September 1, 2011 letter to Dr. Graham: "Gun concerns: an unsecured firearm with ammunition was in a paper bag on the floor under [Rudibaugh's] desk for an approximate 3 week period without our knowledge. I considered it a significant danger to our staff, jail staff and the public." (9/1/11 Letter.) This is problematic in that it is cited by Appellant as evidence that she properly reported her concerns to a superior, although the letter is dated much later, after Appellant had already gone to

the sheriff's department and contacted BCI about the gun. Her stated contention that she considered it to be a "significant danger" is contradicted by her admitted actions. Rather than notifying anyone in her immediate office about it or attempting to secure the gun, she instead traveled to the sheriff's department looking for paperwork to verify receipt and custody of the gun. Regardless, even if it can be said that Appellant was attempting to report a criminal violation of the kind protected by statute, by her own admission she first reported her concerns to the sheriff, not her supervisors. The trial court correctly determined that this second incident does not form the basis for protected whistleblower activity.

{¶40} Lastly, regarding the alleged altered death certificate, Appellant contends that she was given a death certificate to process listing the decedent's cause of death as "accidental" from a fall from a hospital bed. (Bennett Aff., ¶ 14.) She alleges that after she mailed the original death certificate, Rudibaugh, after reviewing recent cases, learned of the contents of the death certificate and became angry, complaining that the hospital would be sued. Appellant suggests (without evidence) that certain investigators were somehow affiliated with the hospital in question. She contends that two weeks later she received a supplemental death certificate reflecting that the cause of death was natural causes. Appellant, believing this change reflected some ethical violation, without any independent research or outside qualified medical opinion, addressed her concerns for the first time to the commissioners and auditor during the August 24th meeting. She at no time prior raised her complaints to Dr. Graham or within her department. This was a clear

bypassing of the Whistleblower statute. As such, her actions precludes Appellant from seeking protection under that statute as regards this incident.

**{¶41}** Looking at the alleged "violations" asserted by Appellant as a whole, the trial court concluded Appellant's "'and/or' designation signifies indecision" and that there was no "reference to the particular criminal statute or ordinance violated nor a reference to a regulation that might constitute a safety violation." (8/14/14 J.E.) Moreover, the trial court stated, "[e]ven when I apply the evidence in the light most favorable to the plaintiff when considering if any of the acts complained of are criminal in nature, there is not a scintilla of evidence that the acts complained of were likely to cause an imminent risk of physical harm to persons OR hazard to public health or safety OR were felonies." *Id.* The record reflects that only one incident, involving the gun, even arguably might meet this standard.

**{¶42}** Even so, the reporting requirements at issue mandate that Appellant notify her "supervisor" or "other responsible officer" of the perceived violations. R.C. 4113.52(A)(3). Appellant had a duty to inform her employer orally or in writing of the perceived violations prior to proceeding to an outside authority. The purpose of this reporting requirement is to put the employer on notice and provide opportunity to first address the alleged violation. Appellant was required to provide her employer a verbal or written notification, whichever is earlier, of the alleged violations before reporting to an outside authority. Thus, the twenty-four hour time period to address the perceived violations begins when Dr. Graham received gets actual notice of the

alleged violations. If Dr. Graham took no action to correct the alleged violation, could Appellant then proceed to report her concerns to an outside authority.

**{¶43}** In her brief, Appellant alleges that she reported her concerns to each of the Appellees, including Dr. Graham. In her affidavit, Appellant contends, "[d]uring my employment, I reported to Dr. William Graham several alleged illegal violations committed by Dr. Graham." (Bennett Aff., ¶ 5.) She next refers to her written letter to Dr. Graham dated September 1, 2011. Appellant then discusses a meeting she had with the commissioners and the auditor regarding the Wagner death certificate held on August 24, 2011, more than a week before the written report was given to Dr. Graham. It is important to note that, with the exception of the Wagner cause of death discussion, Appellant's own evidence shows that she first raised her concerns, not to her supervisor, but to the sheriff, the commissioners and auditor and/or BCI. And the discussion she held with Dr. Graham over the Wagner issue, by her own evidence, reflects that the discussion in no way alerted Dr. Graham to any allegation regarding criminal violations. Instead, Appellant told him she believed it was "odd" Wagner was not life flighted to a treatment facility.

**{¶44}** The Ohio Supreme Court as well as this Court has noted that the framework for reporting set forth in the Whistleblower statute must be strictly adhered to in order for employees to avail themselves of the protections afforded by the statute. Failure to strictly comply with the notification procedures and allow the employer to attempt to correct the alleged violations defeats a claim under R.C. 4113.52. Appellant did not properly follow those reporting requirements.

Furthermore, Appellant's complaints and concerns based primarily on her opinion, and initially raised as such, do not rise to the level of wrongdoing contemplated by R.C. 4113.52. Based on the foregoing, the trial court did not abuse its discretion in finding that no genuine issues of fact remained regarding Appellant's whistleblower retaliation claim and that Appellant failed to establish a *prima facie* case under R.C. 4113.52. Appellant's first and second assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 3

The Trial Court Committed Reversible Error In Determining That No Genuine Issues of Material Fact Remained Regarding Bennett's Constructive Discharge Claim.

**{¶45}** Appellant contends that she was constructively discharged due to the retaliatory conduct of Appellees. In order to establish a *prima facie* case for constructive discharge, Appellant must establish three elements: (1) she engaged in protected activity which would provide protection under the Whistleblower statute; (2) she was subjected to an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. *Wood v. Dorcas,* 142 Ohio App.3d 783, 757 N.E.2d 17 (6th Dist.2001). If a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action taken. *Id.* If the employer puts forth a legitimate reason, the burden then shifts back to the employee to demonstrate the stated reason was pretextual. *Id.*

**{¶46}** As already discussed, Appellant has not shown that she is entitled to protection as a whistleblower pursuant to that statute. This, alone, would require dismissal of her constructive discharge claim. Even if Appellant could get past this legal hurdle, however, her claim for constructive discharge still fails.

**{¶47}** "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.,* 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph four of the syllabus.

**{¶48}** Appellant argues that, as a result of her R.C. 4113.52 protected activity, Appellees took a number of actions which were so adverse that the intolerable nature of her work environment required her to resign. These actions include reducing her work hours, which resulted in loss of her health insurance, and locking her out of her computer for a short time. In response, Appellees contend there existed legitimate, non-retaliatory reasons for the reduction in hours which led to her loss of health coverage. Specifically, Appellees state that the coroner's office budget was reduced and, as Appellant possessed the fewest job skills for the office, her working hours were reduced to meet those budgetary goals. Appellees also assert that Appellant was only temporarily locked out of her computer for a few days while the office ascertained whether any breach of county data had occurred. These contentions are unrebutted in the record.

**{¶49}** The employer's conduct must be reviewed in its entirety to determine whether the cumulative effect would make "a reasonable person believe that termination was imminent." *Mauzy,* at 589. When a public employee voluntarily resigns, the court must consider whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if they were in that employee's position. *Id.* Factors to consider in making this determination include: (1) whether employee was given an alternative to resignation; (2) whether the employee understood the nature of the choices given; (3) whether the employee was given time to make a proper decision; and (4) whether the employee could select a date of resignation. *Id.*

**{¶50}** In the instant matter, Appellant made the decision to resign on her own volition without any input from her employer. Appellant chose to make a public statement of resignation by attending a commissioner's meeting for another stated purpose in order to read aloud her letter of resignation. Thus, the timing of the resignation was also of her own choosing. The question which must be resolved is whether Appellant's working conditions were so "intolerable" as to leave her with no other alternative than to resign. The short-term inability to access her computer while the county checked its data does not appear extreme and Appellant does not challenge Appellee's assertions in this regard. Certainly the reduction in hours and resultant loss of pay and health benefits greatly affected Appellant's working conditions. However, her voluntary resignation was undertaken without any other discussion with her employer. There is no evidence she was criticized or harassed in

the workplace or was unable to discuss her hours and salary with Dr. Graham or Rudibaugh. There is no indication that Appellant attempted to ascertain whether the budget constraints, and so her loss of hours, were a permanent or temporary measure.

{¶51} The trial court noted:

The fact is that the Coroner's budget was reduced, the fact is that the Plaintiff was the least qualified of the three employees, the fact is a coroner's office is different [than] other public offices such as the Auditor or Treasurer. The requirement that employees have the training and experience to investigate a cause of death of county citizens is the very essence of the job. If an employee does not possess those skills common sense dictates that she is going to be the most vulnerable to budget restrictions. The Plaintiff may very well have felt that a reduction to ten hours a week meant that termination was in the future but she must be able to point to other acts of the Defendant when viewed cumulatively to establish a prima facie case of Constructive Discharge.

(8/14/14 J.E.)

{¶52} Therefore, even if Appellant were to be able to demonstrate that she was engaged in protected activity pursuant to R.C. 4113.52, a review of all of the factors set forth in *Mauzy* reveal that the conduct of her employer did not rise to a

level warranting her resignation. Appellant's third assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

The Trial Court Committed Reversible Error In Determining That No Genuine Issues Of Material Fact Remained Regarding Bennett's Intentional Infliction Of Emotional Distress Claim.

**{¶53}** In order to survive summary judgment on an intentional infliction of emotional distress claim, Appellant was required to show that: (1) Appellees either intended to cause emotional distress or knew or should have known the actions taken would result in serious emotional distress to Appellant; (2) Appellees' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) Appellees' actions were the proximate cause of Appellant's psychic injury; and (4) the mental anguish suffered by Appellant is so serious and of a nature that no reasonable person could be expected to endure it. *Burkes v. Stidham,* 107 Ohio App.3d 363, 373, 668 N.E.2d 982 (8th Dist.1995).

**{¶54}** In the present case, Appellant argues that she sought mental health treatment on January 24, 2012 as a result of Appellees' conduct. (Burnett Aff., ¶ 4.) Appellant fails to adduce any material facts which would create a genuine issue so as to withstand summary judgment on a claim for intentional infliction of emotional distress. Appellees' actions did not constitute "outrageous conduct" because the evidence in this record reflects that in deciding to reduce hours to adhere to

budgetary constraints, Appellees did nothing more than exercise its legal rights. Again, Appellant presents no evidence to refute the evidence of budgetary concerns.

**{¶55}** The alleged harm suffered by Appellant in this record is limited to that produced by Appellees' legitimate non-retaliatory conduct and is not the product of "outrageous" conduct or behavior that went "beyond all possible bounds of decency." Thus, the trial court did not err in granting summary judgment on Appellant's intentional infliction of emotional distress claim. Appellant's fourth assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 5</u>

The Trial Court Committed Reversible Error In Determining That No Genuine Issues Of Material Fact Remained Regarding Dr. Graham's Individual Immunity.

**{¶56}** Appellant's amended complaint named as defendants William Graham, Jr., M.D.; Columbiana County; Columbiana County Board of Commissioners Office; Columbiana County Auditor's Office and Columbiana County Coroner's Office. The trial court concluded that all defendants were "incapable of being sued," pursuant to R.C. 2744. Appellant does not dispute the trial court's dismissal of the governmental offices and entities. Appellant assigns error only to the trial court's conclusion regarding Dr. Graham's personal immunity.

**{¶57}** In general, political subdivisions are immune from civil liability pursuant to R.C. 2744.02(A). However, if one of the exceptions set forth in R.C. 2744.02(B) applies, a political subdivision may be subject to liability. Even if the government may

be liable, an employee of a political subdivision is also entitled to a general blanket of immunity and may be held civilly liable only if one of the R.C. 2744.03(A)(6) factors applies.

{¶58} Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision has immunity from civil liability unless: (1) the employee's act or omissions are manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed on the employee by a provision within the revised code. In these cases, an employee may be held personally liable.

{¶59} In her amended complaint, Appellant names as parties a number of Columbiana County offices and departments and also names Dr. Graham. Appellant asserts that Dr. Graham's conduct rose to the level necessary to subject him to personal liability. Appellant complains of certain acts by Dr. Graham that allegedly go beyond his scope of employment. For instance, in his deposition Dr. Graham testified that he felt Appellant was "insubordinate" when she failed to discuss the substance of the complaints with him at a meeting he initiated. (Graham Depo., pp. 21, 23.) Appellant also states that requiring her to write down her complaints demonstrates retaliatory animus by Dr. Graham. Appellant again argues that being locked out of her computer and having her work hours reduced is evidence of Dr. Graham's malicious conduct.

**{¶60}** The Supreme Court of Ohio has held that when the allegations contained in a civil complaint are directed against an office of a political subdivision, the officeholder named as a defendant in that complaint is sued in his or her official capacity, rather than as an individual, and a R.C. 2774.04 analysis applies. *Lambert v. Clancy,* 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585. In the instant matter, in her original complaint Appellant raised claims against both the Columbiana County Coroner and William Graham, who served as the elected county coroner. In her amended complaint, Appellant additionally names several other political subdivisions as parties defendant in addition to the Columbiana County Coroner and Dr. Graham.

**{¶61}** Whether R.C. 2774.04 immunity applies involves a three-tiered analysis. *Elston v. Howland Local Schools,* 113 Ohio St.3d 341, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. The first tier provides for a general grant of immunity, stating "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

**{¶62}** The second tier of analysis involves the five exceptions to immunity set forth in R.C. 2744.02(B); *Elston,* ¶ 11. If any of the exceptions apply, the political subdivision's immunity is stripped. However, in the third tier of the analysis a court must determine whether any of the defenses to liability enumerated in R.C. 2744.03 exist, allowing immunity to be reinstated. *Elston* at ¶ 12.

**{¶63}** Employees of political subdivisions also have R.C. 2744.03(A)(6) immunity. Rather than the three tiered analysis, the employee is immune from liability unless it can be shown that:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

**{¶64}** In neither complaint does Appellant add the words "individually," "personally," or any other signifier to indicate that Dr. Graham was being sued in any other capacity than his official capacity. However, Appellant's prayer for relief in the complaint seeks relief from Dr. Graham as well as the other defendant political subdivisions, including the coroner of Columbiana County, an elected position which Dr. Graham held at the time the complaint was filed.

**{¶65}** In ascertaining whether Appellant may seek damages from Dr. Graham in his individual capacity, we must analyze whether immunity applies pursuant to R.C. 2744.03(A)(6). Subsection (C) clearly does not apply. We must look to whether Dr. Graham's actions towards Appellant were "manifestly" outside of Dr. Graham's official responsibility or were done maliciously, wantonly or recklessly. The only evidence of record shows that Dr. Graham had a legitimate, non-retaliatory basis for

reducing Appellant's hours. This reduction was based on budget concerns and the record shows his actions in this regard did not rise to the requisite level of "malicious, in bad faith, or wanton or reckless" conduct anticipated by R.C. 2744.03(A)(6). Similarly, in his deposition testimony Dr. Graham stated that he found out about the meeting Appellant had with the commissioners and auditor and, at the suggestion of the county prosecutor, arranged personally to meet with Fullum and Appellant separately. He also agreed to let Appellant record the meeting which, although it does not automatically indicate a lack of animus, would certainly not weigh in favor of Appellant's requirement to show "malicious" behavior on the part of Dr. Graham. Finally, Dr. Graham's request for a written report of her complaints was due to Appellant's emotional state, as Dr. Graham thought it would make it easier for Appellant to communicate her concerns. This evidence does not reflect the type of malicious behavior anticipated by the statute necessary in order to take Dr. Graham outside of the scope of his employment and warrant a loss of immunity.

**{¶66}** This record reveals that Dr. Graham's conduct did not rise to the level required by R.C. 2744.03(A)(6) to warrant waiver of immunity from civil liability. The trial court did not err in granting summary judgment in favor of Dr. Graham on the issue of his personal liability. Appellant's fifth assignment of error is without merit and is overruled.

**{¶67}** Based on the foregoing, Appellants' five assignments of error lack merit and are overruled. The judgment of the Columbiana County Court of Common Pleas is affirmed in full.

DeGenaro, J., concurs.

Robb, J., concurs.